UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WINSTON & STRAWN LLP,

 Plaintiff,

vs.         Case No: 1:08-cv-00144 (RBW)

HAROLD E. DOLEY     Oral Argument Requested
and DOLEY SECURITIES, INC.,

 Defendants.

_____

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

   Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Winston & Strawn LLP moves for summary judgment as to the entirety of its complaint for breach of contract. In support of this motion, Plaintiff relies upon the accompanying memorandum of points and authorities. A proposed order is also enclosed.

   WHEREFORE, for these and such other reasons as may appear just to the Court, Plaintiff requests that the Court grant this Motion for Summary Judgment.

         Respectfully submitted,


        _____\s_____
        Thomas Buchanan # 337907
        Charles B. Klein # 450984
        Winston & Strawn LLP
        1700 K Street, N.W.
        Washington, D.C. 20006-3817
        (202) 282-5000

        *Counsel for Plaintiff*

Dated: April 24, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion for Summary Judgment, accompanying memorandum, and a proposed order have been sent through the Court's electronic transmission facilities on this 24th day of April, 2008.

_____\s\_____

Charles B. Klein # 450984
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20006-3817
(202) 282-5000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WINSTON & STRAWN LLP,

     Plaintiff,

vs.                                                    Case No: 1:08-cv-00144 (RBW)

HAROLD E. DOLEY
and DOLEY SECURITIES, INC.,

     Defendants.

_____

## **ORDER**

     Upon consideration of Plaintiff's Motion for Summary Judgment, the Defendants' response thereto, any hearing thereon, and the entire record in this action, the Court being fully informed, it is this _____ day of _____, 2008 hereby

     ORDERED that Plaintiff's Motion for Summary Judgment is hereby GRANTED; and it is further

     ORDERED that judgment be entered in favor of Plaintiff and against Defendants, jointly and severally, for $84,412.19 plus pre-judgment interest, costs and expenses.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Thomas M. Buchanan # 337907
Charles B. Klein # 450984
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C.  20006-3817
(202) 282-5000

Claude Roxborough
Law Offices of
Kimmel & Roxborough, LLC
709 Irving St. NW
Washington, DC 20010
(202) 368-8847

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WINSTON & STRAWN LLP,

     Plaintiff,

vs.                                 Case No: 1:08-cv-00144 (RBW)

HAROLD E. DOLEY              Oral Argument Requested
and DOLEY SECURITIES, INC.,

     Defendants.

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

       This is a simple breach of contract case involving Defendants' failure to pay their legal fees. As demonstrated below, Plaintiff Winston & Strawn LLP ("W&S") is entitled to summary judgment as to its claim for breach of contract damages totaling $84,412.19 plus interest.

**BACKGROUND**[1]

       Defendant Harold E. Doley, an experienced businessman, and his company, Defendant Doley Securities, Inc. ("DSI"), agreed in writing that W&S would represent them in connection with a regulatory investigation by the Office of Thrift Supervision ("OTS"). In exchange, Defendants agreed to pay W&S for these legal services. The fee and cost structure for W&S's services were explained to Defendants both orally and in the parties' engagement letter agreement – the identical written attorney-client arrangement used by law firms across the country. In fact, the form of the parties' agreement has been endorsed by both the American Bar Association ("ABA") and the District of Columbia Bar.

---

[1] The relevant, undisputed facts are spelled out in more detail in Plaintiffs' Statement of Material Facts as to Which There Exists No Genuine Issue for Trial ("Facts").

The parties' agreement discussed the terms of the attorney-client relationship and explicitly stated, among other things, that: (1) the nature of the engagement would concern W&S's representation of Defendants in the OTS investigation; (2) W&S's fees would be determined on an hourly basis, with attorney hourly rates ranging from $200 to $845; (3) the firm's monthly bills would include allocable charges for costs and expenses incurred in performing the legal services; and (4) the firm expected Defendants to pay these bills within 30 days of the invoice. Facts at ¶¶ 9-11.

W&S conducted legal work on Defendants' behalf under the terms of this agreement. This legal work included, among other things, reviewing thousands of documents that were produced to the OTS, meeting with OTS personnel regarding its investigation and Defendants' document productions, providing advice to Defendants regarding certain stock purchases, preparing Doley for his deposition and defending that deposition. *Id.* at ¶¶ 13-16. In total, W&S attorneys devoted 215.25 hours of billable work to the representation of Defendants. *Id.* at ¶ 17.

W&S sent Defendants three invoices in June, July and August 2007 totaling $94,412.19 in legal services. *Id.* at ¶ 18. In light of a $10,000 retainer paid by Defendants at the outset of the attorney-client relationship, the amount owed to Defendants under these invoices totaled $84,412.19. *Id.* at ¶¶ 18, 20. Although more than eight months have passed since W&S sent the invoices, Defendants have never objected to the quality or quantity of the work done by W&S on Defendants behalf, and never complained outside the context of this lawsuit about the amount W&S charged for its legal services. *Id.* at ¶ 19. On the contrary, Doley promised W&S on several occasions that payment was forthcoming, but that payment never came. *Id.* Defendants currently owe W&S $84,412.19, plus interest. *Id.* at ¶ 20.

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. Nor can the nonmoving party rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific evidence that would enable a reasonable jury to find in its favor. *Id.* at 675. If that evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

**ARGUMENT**

W&S brings this case under the well established principle that "[a] client, in retaining a lawyer, assumes or undertakes to pay for the legal services that will be rendered." WILLISTON ON CONTRACTS § 62:2 at 279 (2002). The parties entered into a written agreement governing their attorney-client relationship. W&S honored its obligations under the agreement by performing appropriate and necessary legal work on behalf of Defendants in connection with the OTS investigation. But Defendants have refused to pay W&S for these services. As demonstrated below, these undisputed facts entitle W&S to summary judgment under the breach of contract doctrine of account stated or, alternatively, traditional breach of contract principles.

I.    **Defendants' Failure To Challenge The W&S Invoices In A Timely Manner Created An Account Stated.**

This Court should grant summary judgment in W&S's favor based on the breach of contract theory of account stated.  An account stated arises where, as here, there is a course of dealing between the parties, the creditor (here, W&S) has issued statements of account or invoices, and the debtor (here, Defendants) has failed to challenge the statements in a timely manner.  *See Reed Research, Inc. v. Schumer Co.*, 243 F.2d 602, 605 (D.C. Cir. 1957).

In *Riley v. Mattingly*, 42 App. D.C. 290 (D.C. Cir. 1914), the D.C. Circuit applied the account stated doctrine in a legal fee dispute context, affirming summary judgment in favor of the lawyer.  The Court of Appeals explained that "[a]n account rendered [by a legal fee invoice], and not objected to within a reasonable time, is to be regarded as admitted by the party charged to be prima facie correct, and may not be impeached save for fraud, error, or mistake." *Id.* at 294.  It affirmed the grant of summary judgment in favor of the lawyer because "the account forming the basis of the action was held by the defendant for a period of eight months without being disputed in any way."  *Id.* at 295.  In so ruling, the D.C. Circuit rejected the defendant's defense "that plaintiffs' bill is too high" – finding that "[t]his averment raises no question of either accident or mistake."  *Id.*

This Court in *Brand v. Westall*, Civ Act. No. 94-0312, 1995 WL 235579 (Apr. 21, 1995 D.D.C. 1995), similarly granted summary judgment on behalf of lawyers in a fee dispute based on an account stated theory.  That case involved an engagement letter under which the client agreed to be held responsible for fees and expenses incurred in the course of the lawyers' representation.  The lawyers moved for summary judgment based on the undisputed facts that they performed legal services pursuant to the engagement letter, those services were performed in a competent manner, statements of account were regularly delivered to the client and never

questioned, the client accepted the accounts stated, and a debt is outstanding.  This Court granted the lawyers' motion for summary judgment, finding that "Defendants' conclusory denial of liability [in the lawsuit] is an inadequate basis upon which to find anything other than that the account rendered by plaintiffs is an account stated, and that plaintiffs are entitled to judgment in the amount sought." *Brand*, 1995 WL 235579, at *5.

These cases are on point.  There is no dispute that the parties here entered into an engagement letter agreement governing the attorney-client relationship, W&S performed legal services under that agreement and submitted invoices to Defendants for services rendered, and Defendants accepted those invoices by not objecting to them within a reasonable time.  Facts at ¶¶ 18-19.  In fact, Doley promised W&S on several occasions that payment was forthcoming. *Id.* ¶ 19.  As discussed above, both the D.C. Circuit and this Court already have held that these precise circumstances warrant summary judgment in W&S's favor for the amount owed.  *See Riley*, 42 App. D.C. at 294-95; *Brand*, 1995 WL 235579, at *5.  This is the law in other Circuits as well.  *See, e.g., Saul, Ewing, Remick & Saul v. Larosa*, 60 F.3d 824, 1995 WL 420012, at *2 (4th Cir. July 13, 1995) (affirming summary judgment to the plaintiff law firm under the account stated theory where the firm provided legal services to the defendants, prepared statements of account for the services provided to the defendants, and the defendants failed to object to the fact or amount of the liability, and failed to express dissatisfaction with the services or state their intent not to pay the balance on the account); *Nilsson, Robbins, Dalgarn, Berliner, Carson, & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1542-43 (9th Cir. 1988) (affirming summary judgment to a law firm under account stated where defendants never complained about the amount of money charged by the firm, and never responded to defendants' letter demanding payment).

Significantly, Defendants cannot rebut W&S's breach of contract/account stated claim by arguing for the first time in this lawsuit that the W&S invoices are unreasonably high. The law is clear that the lack of an objection to bills after a reasonable amount of time creates an account stated. As the D.C. Circuit explained in a case affirming summary judgment for the plaintiff under the account stated doctrine, this issue raises a question of law, not fact: "[T]he lapse of time which converts an account rendered into an account stated, i.e., what is a reasonable time, is a question of law for the court." *Reed Research*, 243 F.2d at 604. Moreover, the Supreme Court has found that "silence between three and four months" is "*un*reasonable." *Id.* (citing *Standard Oil Co. v. Van Etten*, 107 U.S. 325 (1882)) (emphasis added). Consequently, Defendants' silence as to W&S's invoices for a period of at least eight months should be deemed an acceptance as a matter of law, thus warranting summary judgment in W&S's favor. *See Riley*, 42 App. D.C. at 295 (finding account accepted because it "was held by the defendant for a period of eight months without being disputed in any way").

## II.    Defendants' Failure To Pay W&S's Invoices Also Constitutes A Traditional Breach Of Contract.

W&S is also entitled to summary judgment under traditional breach of contract principles. To state a breach of contract claim for failure to pay, the plaintiff merely needs to show "that the defendant is under an obligation to pay the plaintiff a certain amount of money and interest, that he or she has refused to comply with the obligation, and that payment is due, for which judgment is requested." WILLISTON ON CONTRACTS § 62:7 at 315 (2002). This is the case here.

Defendants' financial obligation to W&S stems from the parties' engagement letter agreement. Law firms routinely rely on letter agreements like the one at issue here to memorialize their attorney-client relationship. *See, e.g., Avocent Redmond Corp. v. Rose*

*Electronics*, 491 F. Supp. 2d 1000, 1004 (W.D. Wash. 2007) ("[t]he engagement agreement is the basic contract with the client and its terms are accorded substantial weight in determining the scope of the relationship"); *cf. Flynn v. Sarasota Country Pub. Hous. Bd.*, 169 F. Supp. 2d. 1363, 1370 n.6 (M.D. Fla. 2001) (finding a valid fee agreement that consisted of the engagement letter and subsequent conduct of the parties, even though the client did not sign the engagement letter).

  In fact, the parties' agreement here is precisely the type of written instrument encouraged by the ABA and contemplated by the D.C. Rules of Professional Conduct to create an enforceable attorney-client relationship and mutual obligations. *See* Stephen M. Terrell, *Rules of Engagement: Taking the Offense When It Comes to Defense,* ABA General Practice v.19 n.7 (Oct./Nov. 2002) ("The engagement letter is the key to the attorney-client relationship. It is the contract that, along with the Rules of Professional Conduct, governs your relationship with your client.") (Ex. 1); D.C. Rules of Prof'l Conduct 1.5(b) ("When the lawyer has not regularly represented the client, the basis or rate of the fee, the scope of the lawyer's representation, and the expenses for which the client will be responsible shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation."). The purpose of such a written agreement is to "reduce[] the possibility of misunderstanding." D.C. Rules of Prof'l Conduct 1.5(b), comment 2.[2]

  This Court has granted summary judgment for breach of contract liability where, as here, a client has refused to pay his bill. In *Innovative Staffing Solutions, Inc. v. Greater*

---

[2] The comments to Rule 1.5(b) state, in relevant part: "Unless there are unique aspects of the fee arrangement, the lawyer may utilize a standardized letter, memorandum, or pamphlet explaining the lawyer's fee practices, and indicating those practices applicable to the specific representation. Such publications would, for example, explain applicable hourly billing rates, if billing on an hourly rate basis is contemplated, and indicate what charges (such as filing fees, transcript costs, duplicating costs, long-distance telephone charges) are imposed in addition to hourly rate charges."

*Southeast Community Hosp. Corp.*, 2007 WL 4125424 (D.D.C. Nov. 19, 2007), the defendants

agreed to pay Innovative a predetermined hourly rate for registered nursing and other health care

services. For a time, the defendants timely paid the weekly invoices presented by Innovative.

But the defendants ultimately failed to pay six invoices, owing more than $400,000. Based on

these undisputed facts, the Court granted summary judgment in favor of the plaintiff for breach

of contract. *Id.* at *1; *see also Ristau v. Madhvani*, 1991 WL 283666, at *1-2, 4 (D.D.C. Dec.

20, 1991) (ruling in favor of attorney on breach of contract claim because, among other reasons,

the "defendants have never claimed that [the attorney's] performance of the work was in any

way unsatisfactory").

Similarly, there is no dispute here that the parties entered into a written letter

agreement for legal services and that Defendants owe W&S for services rendered under that

agreement. Facts at ¶¶ 9-19. This is a classic breach of contract, entitling W&S to summary

judgment as a matter of law. *See Innovative Staffing Solutions*, 2007 WL 4125424, at *1.

## CONCLUSION

For the foregoing reasons, this Court should enter summary judgment in favor of Plaintiff

for breach of contract damages of $84,412.19, plus pre-judgment interest, costs and expenses.

Respectfully submitted,

_____\s_____
Thomas Buchanan # 337907
Charles B. Klein # 450984
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5000

*Counsel for Plaintiff*

Dated: April 24, 2008

8

# EXHIBIT 1



Defending Liberty
Pursuing Justice

**Print This Page** | Close Window



ABA General Practice, Solo & Small Firm Division

**Volume 19, Number 7**
**October/November 2002**

**Rules of Engagement**
**Taking the Offense When It Comes to Defense**

*By Stephen M. Terrell*

It's a scene played out every day in countless law offices across the country: A valued business client walks in to your office and recites how he has gotten into a dispute over his latest project. You ask, "Did you bring the contract with you?" A deadly, prolonged pause ensues. Sheepishly, the client lowers his head. In that instant, you know: He has no written contract. All those conferences about how important it is to put the terms of an agreement
in writing have been ignored.
"Joe, you know how many times I've told you-get your contracts in writing. It's a lot cheaper to have a lawyer review a contract than it is to litigate a dispute."
"Will you still take the case?" Joe asks.
"Sure, Joe, I'll start work on it right away."
But wait-did you say "right away"? Where's the written contract? What happened to all those warnings about "handshake deals" and admonitions to "get it in writing" so there are no mistakes about the terms? What about that risk-management advice concerning the benefits of written contracts?
Physician, heal thyself!

Unfortunately, this scenario happens every day in solo and small firm law offices all across the country. Lawyers undertake representation with little more than an understanding and a handshake. As a group, we often fail to take our own oft-repeated advice to clients about formalizing our business relationships in writing. We should know better-and do better.
Engagement letters, nonengagement letters, letters of limited representation, and disengagement letters should be a fundamental and routine part of every lawyer's practice. They are a simple, effective, and inexpensive way to prevent misunderstandings with clients, minimize risks, and even enhance firm marketing. Like having an annual physical, we all know we should be doing it; we just don't. But the limited time it takes to draft and utilize effective engagement, nonengagement, and disengagement letters may be the best work you do to manage your practice.

**Engagement Letters**
The engagement letter is the key to the attorney-client relationship. It is the contract that, along with the Rules of Professional Conduct, governs your relationship with your client. A well-drafted engagement letter sets out the specific responsibilities the lawyer undertakes, as well as the client's obligations. It is invaluable in avoiding disputes with clients and, if conflict arises, becomes the key document by which the dispute will be resolved.

Ann Massie Nelson, director of communications for Wisconsin Lawyers Mutual Insurance Company, has reduced the function of the engagement letter to a mnemonic, ACCEPT.1 She recommends that the letter:
o **Acknowledge who is the client.** This means expressly identifying who the lawyer represents and, if appropriate, who the lawyer does not represent. (The latter often is more important when the issue does arise.)
o **Set the circumstances of the employment**, the specific matter for which the lawyer is being retained.
o **Establish the expectations**, what the lawyer is really agreeing to do.
o **Detail the payment for services and the timing for payment.** As all lawyers know, issues over billing and payment are frequently the flash point for lawyer-client disputes. Include the hourly fee for each attorney and paralegal, how any contingency fee will be calculated, and what expenses will be charged. The more details provided in the engagement letter, the less wiggle room for disputes to arise.
Retainers may deserve special attention2 because they're often confusing to clients. Are they applied to the first bill or the last? Are they used to pay ongoing fees, and do they need to be replenished each month to maintain a constant amount? These matters need to be spelled out.
Another essential is termination.3 Although the client may understand that she can fire the lawyer, circumstances under which the lawyer can fire the client need to be made clear. Of course, this provision should comply with applicable rules of professional conduct.

## Letters of Limited Representation
Traditionally, clients have viewed solo and small firm lawyers personally, as "my lawyer." This is one of the reasons why surveys consistently show that respondents hold the legal system in low regard but think highly of their own lawyers.
But the personal tradition is fading. According to Barrie Althoff, chief disciplinary counsel for the Washington State Bar Association, more clients are not looking for the full bundle of legal services and representation. In a series of articles in the bar's newsletter, Althoff observes they are opting instead-at least at the outset-for limited representation. To a large extent, this trend is caused by the simple fact that many clients cannot afford full-service representation.4
Although this "unbundling" of legal services is permissible, it is full of pitfalls for the unwary lawyer. But Althoff emphasizes the "default" scope of representation, and unless the lawyer has specified a limitation on the representation, she will be held to the "full services" approach.
In order for a lawyer to limit representation to a specific matter or issue, the lawyer must comply with the applicable rules of professional conduct. Model Rule 1.2 permits the lawyer to limit representation provided that the lawyer consults with the client about the limited representation and that, after the consultation, the client consents to the limitation. Although putting the agreement in writing is not required by the rules, common sense and good practice suggest specifically setting forth the limits of representation in an engagement letter. The letter should identify the specific matter and services for which the lawyer is being retained and further specify that the lawyer is not being retained for any other purpose. Good practice would also require including a provision that any additional legal services would require a separate engagement letter.
Having set out the terms and limitations of the engagement, the lawyer must not stray from these terms. A lawyer who agrees only to provide certain services then goes on to provide broader representation may find herself "on the hook" for providing full legal services despite her engagement letter to the contrary. If your representation of the client begins to expand into new areas or matters, a new engagement letter for each area or matter is required.

## Nonengagement Letters
Nonengagement letters are perhaps the most overlooked of all the letters establishing terms of employment-or, in this case, the terms of nonemployment. Whether through informal discussions at a cocktail party or formal consultation meetings in the office, lawyers are frequently asked to "just take a look at" a matter. If, after review, the lawyer decides not to take the case, what should be done? For many, the answer is nothing-just make a phone call saying thanks but no thanks. After all, you didn't take the case, so why do more?
The answer, of course, is self-protection and risk management. According to Harvey L. Wendell, an attorney in Madison, Wisconsin, the absence of nonengagement letters often means firms have to compromise their fees or lose legal malpractice cases. Wendell strongly recommends that a nonengagement letter should be used any time a prospective client makes a request for legal service and the firm decides not to accept the employment. A mere oral response invites financial exposure to the firm.5
The same thoughts are echoed by Chris Stiegemeyer, vice president for The Bar Plan insurance company. Stiegemeyer, who speaks nationally on risk management for lawyers, strongly encourages the use of nonengagement letters. At a minimum, he says, the letter should set out the nature and purpose of the meeting between the prospective client and lawyer and assert that no representation was accepted by the firm, the matter may be subject to a statute of limitations that could bar the person's claim, and prospective counsel should seek another attorney or take other appropriate measures on its own behalf to protect their interests.

Stiegemeyer recommends against giving an opinion in a nonengagement letter as to when the statute of limitations will run. If the prediction is wrong, the firm could be exposed to a malpractice claim even though it never accepted employment. The one exception to this rule is when the statute of limitations will run in the immediate future. In these cases, Stiegemeyer recommends advising the potential client of the date for the running of the statute and documenting how that date was calculated (i.e., "Based on our brief meeting and not on any additional research or investigation by our firm, it appears your statute of limitations may run as soon as...").

But even a nonengagement letter can be used as a business development tool. A friendly note at the end of the letter can advise the prospective client that your not taking the case does not mean you would not be interested in representing the client in other matters in the future.

## Disengagement Letters

The attorney-client relationship can terminate for many reasons: The matter for which representation was needed is complete; the firm has discovered a conflict of interest; the client has not paid the bill or cooperated. Regardless of the reason, terminating the attorney-client relationship must be done with care. It also must be done in compliance with Rule 1:16, declining or terminating representation, as well as any applicable local court rules. These rules generally deal with protecting the client's interests.

The importance of a well-crafted termination letter is emphasized by Hammond, Indiana, lawyer Melanie Dunajeski. She advises firm associates to imagine, before sending out a termination letter, the letter before them in a deposition with an exhibit sticker on it. This visual imagery brings home the care with which such a letter must be drafted.

Ann Massie Nelson summarizes the necessary content of a termination letter with the mnemonic PART,6 suggesting that every termination letter include the following sections:

o **Position:** Clearly state the position of the firm in terminating the employment.

o **Action:** Recite both the action taken to date by the lawyer and the actions the client needs to take. Recommenda-tions from malpractice carriers are to be careful with statements about exact dates or deadlines because a misstatement can expose the lawyer to a malpractice claim. Of course the letter should encourage the now ex-client to seek other legal counsel as soon as possible.

o **Reason:** Clearly state the reason for the termination ("You have failed to pay legal fees as set forth in our engagement letter").

o **Terms:** Address all outstanding legal fees and expenses and include a final bill.

## Where to Turn

Those seeking guidance on the subject of engagement letters, nonengagement letters, and disengagement letters will find ample resources. Jay Foonberg's classic How to Start & Build a Law Practice (ABA 1999) contains examples of engagement, nonengagement, and disengagement letters. Another widely recognized book that discusses these issues is The Law of Lawyering, by Geoffrey C. Hazard and W. William Hodes. The Essential Formbook: Comprehensive Management Tools for Lawyers, by Gary A. Munneke and Anthony E. Davis, provides samples of almost every form you might require.

The ABA's Law Practice Management Section (www.abanet.org/lpm) is a valuable resource for all types of information regarding your practice, including information on engagement letters. Various state bar associations also serve as resources for sample letters, for example, online links to bar materials from Georgia, Wisconsin, Washington, North Carolina, and Missouri. Check out their websites and archives of journal articles.

The Internet also is a rich source of materials. A Google or Yahoo search under "lawyer engagement letter" or a similar term will return a wide range of searchable sites and useful information.

## Notes

1. Ann Massie Nelson, Six Elements of An Engagement Letter, WIS. LAW., Dec. 1994, (available from Archives, www.wilmic.com).
2. Richard D. Harroch, Five Key Provisions in Attorney/Client Engagement Letters, LawCommerce.com (www.lawcommerce.com/info/five_key_prov.asp).
3. Id.
4. Barrie Althoff, Limiting the Scope of Your Representation: Questions of Cost, Candor and Disclosure, 1997 WASH. ST. B. NEWS (www.wsba.org/barnews/archives97/limiting2.html).
5. Harvey L. Wendell, Old Timer Comments, WIS. L PRAC. NEWSL. (Winter 1999) (www.wisbar.org/sections/lp/news/win99.html).
6. Ann Massie Nelson, Letters Protect You When You PART Ways or PASS on Representation, WIS. LAW. (1995) (available from Archives, www.wilmic.com).

*Stephen M. Terrell* is a member with Landman & Beatty in Indianapolis, Indiana.

---

**Past Issues**                                                                      »

Search GPSOLO    [ Go ]
*Search archives since 1995*

Browse Past Issues of *GPSOLO*

---



### Enjoy the benefits of membership:
*Award-Winning Periodicals*
*Special Member Discounts*
*Practice Area Committees*
*Continuing Legal Education*
*Networking Opportunities*
*Leadership Opportunities*
### Not a Member?
### Join Now!

---

**2007/08 Editorial Board**

*GPSOLO* Magazine

**Editor-in-Chief**
Joan M. Burda   *jmburda@mac.com*

**Assistant Editor**
Judy Toyer

**Editorial Board**
Jeffrey M. Allen
Martha J. Church
Jane Kow
David Leffler
Karen Renzulli Lynch
John P. Macy
James P. Menton
Larry Ramirez
Laurie K. Redman
James Schwartz
Andrew C. Simpson
Bryan S. Spencer

*Technology & Practice Guide* Issue

**Special Issue Editor**
Jeffrey M. Allen   *jallenlawtek@aol.com*

**Editorial Board**
Wells H. Anderson
Daniel S. Coolidge
Bruce Dorner
D.A. Drouillard
Kimberly T. Lee
Alan Pearlman
Nerino J. Petro, Jr.
J. Anthony Vittal
*Ex Officio*: Ross Kodner

*Best of ABA Sections* Issue

**Special Issue Editor**
Jennifer J. Ator   *jenniferjator@gmail.com*

**Editorial Board**
Lloyd D. Cohen
David Zachary Kaufman

**ABA Publishing**

Director of Publishing: Bryan Kay
Editorial Director: Claire L. Parins
Editor: Robert M. Salkin
Editorial Assistant: Oreather McLin
Design and Production Director: Russell Glidden
Senior Art Director: Tamara Nowak
Print Administration Director: John Rhead
Production Coordinator: Sandy Rogers

**This page was printed from:** http://www.abanet.org/genpractice/magazine/2002/oct-nov/rules.html

Close Window

© 2008. American Bar Association. All Rights Reserved. ABA Privacy Statement

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WINSTON & STRAWN LLP,

      Plaintiff,

vs.                                             Case No: 1:08-cv-00144 (RBW)

HAROLD E. DOLEY
and DOLEY SECURITIES, INC.,

      Defendants.

_____

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE EXISTS NO GENUINE ISSUE FOR TRIAL**

      Pursuant to Local Rule 7(h), Plaintiff Winston & Strawn LLP ("W&S" or "Plaintiff"), by counsel, hereby submits its separate and concise statement of those material facts as to which there exists no genuine issue for trial.

**I.      Background**

      1.      W&S is an international law firm with offices throughout the United States and abroad. *See* Declaration of Thomas M. Buchanan at ¶ 2 (Ex. A).

      2.      Harold E. Doley is an experienced businessman. He is the founder of Doley Securities, Inc. ("DSI"), has been an individual seat holder on the New York Stock Exchange since 1973, and is an underwriting member of Lloyd's of London. *Id.* at ¶ 3 & Attachment 1.

      3.      DSI was founded in 1973. It specializes in providing investment products and services to institutional clients, and its specialties include raising capital for securities issuers, providing secondary market services for institutional investors, and furnishing financial advisory services to institutions, corporations, government and political subdivisions. *Id.* at ¶ 4 & Attachment 1.

4.      Chad Robert serves as the President of DSI. *Id.* at ¶ 4 & Attachment 1.

5.      Before Doley and DSI retained W&S, the Office of Thrift Supervision ("OTS") served on Defendants a subpoena for documents. In response, Defendants produced thousands of pages of documents to the OTS. *Id.* ¶ 5.

6.      Thereafter, OTS issued a second subpoena to Defendants requesting additional documents and Doley's deposition. In the early spring of 2007, after the return date of the second round of documents had already passed but before any documents were produced, Defendants approached W&S seeking legal counsel. *Id.* ¶ 6.

7.      Before W&S's representation of Defendants began, W&S partners Thomas M. Buchanan and Michael A. Mancusi met in person with Doley and Robert (who was representing DSI). Buchanan and Mancusi explained to Doley and Robert what legal work would need to be done to represent them properly. In particular, Buchanan and Mancusi explained that W&S would need to review the documents that Doley and DSI already produced to the OTS, and also would need to review additional documents that could be responsive to the second OTS subpoena. Buchanan and Mancusi further explained that they needed to prepare Doley for his OTS deposition and then defend that deposition. Doley and Robert said in that meeting that they understood what W&S's work would entail. *Id.* ¶ 7.

8.      During that initial meeting, W&S also explained the fees and costs that would be associated with W&S's representation of Defendants. Buchanan said that the matter would be billed on an hourly rate basis, in quarter-hour increments, and that his hourly billing rate was $595 and Mancusi's hourly billing rate was $480. Again, both Doley and Robert told Buchanan and Mancusi that they understood and accepted the fees and costs that were associated with W&S's legal work. *Id.* ¶ 8.

**II.     The Parties' Agreement**

9.      On April 19, 2007, before W&S conducted any work on behalf of Defendants, Buchanan sent an engagement letter agreement to both Doley and DSI.  This agreement provides, among other things, that "the firm's clients will be clients Harold Doley and Doley Securities, Inc."  The parties' agreement also states that W&S's "policy at the outset of an engagement with new clients is to outline not only the nature of the engagement, but also the basis on which the firm will provide legal services and bill for them."  *Id.* ¶ 9.

10.     The letter agreement discusses the terms of the attorney-client relationship and explicitly states, among other things, that:  (1) the nature of the engagement concerns W&S's representation of Defendants in the OTS investigation; (2) W&S's fees would be determined on an hourly basis, with attorney hourly rates ranging from $200 to $845; (3) the firm's bills would include allocable charges for costs and expenses incurred in performing the legal services; (4) W&S would bill Defendants monthly; and (5) the firm expected Defendants to pay the bills within 30 days of the invoice.  *Id.* at ¶¶ 10-12 & Attachment 2 at ¶¶ 2-4.

11.     In the letter agreement, W&S requested that Defendants pay a "$10,000 retainer to initiate the engagement" and explained that "[t]his retainer will be applied against ongoing fees and expenses."  *Id.* at ¶ 13 & Attachment 2 at ¶ 10.  Defendants paid this $10,000 retainer on May 23, 2007.  *Id.* at ¶ 15.

12.     Doley signed the letter agreement on April 20, 2007, on his behalf, and Robert signed the engagement letter on April 20, 2007, on behalf of DSI.  In the agreement, both Doley and DSI "acknowledge[d] and agree[d] that, prior to entering this Agreement, they have been advised and have had the opportunity to consult with independent counsel (not W&S) regarding the terms and conditions of this Agreement."  *Id.* at ¶ 14 &  Attachment 2 at ¶ 10.

**III.    W&S's Performance Under The Agreement**

13.    W&S performed legal services on behalf of Defendants after the parties executed the engagement letter.  First, there was a dispute over what OTS claimed Defendants produced pursuant to the first subpoena, and what Defendants believed that they produced.  In connection with this dispute, W&S had to review the thousands of pages of documents that were produced pursuant to the first subpoena and then meet with OTS representatives to compare what they received to what Defendants believed was produced.  *Id.* at ¶ 16.

14.    Second, W&S needed to review thousands of additional pages to determine if Defendants needed to supplement their production based on the second OTS subpoena.  As those documents were due before W&S even began its representation of Defendants, W&S had to conduct their document review over a short period of time.  The firm did produce additional documents on behalf of Defendants.  *Id.* at ¶ 16.

15.    Third, W&S had to prepare Doley for his deposition.  The firm also defended Doley's deposition.  *Id.* at ¶ 16.

16.    Finally, W&S provided legal advice to Defendants regarding certain purchases of stock.  *Id.* at ¶ 16.

17.    This legal work was performed by W&S partners Buchanan and Mancusi, and a W&S associate.  In total, W&S devoted 215.25 of legal work on behalf of Defendants.  All of this work was necessary and appropriate with regard to W&S's representation of Defendants  *Id.* at ¶¶ 17-18.

**IV.    Defendants' Breach Of The Agreement**

18.    Pursuant to the parties' agreement, W&S sent three detailed bills dated June 28, 2007, July 18, 2007, and August 28, 2007, to Defendants covering both legal fees and expenses incurred during the course of the legal representation.  The June 2007 bill totaled $68,931.85; the

July 2007 bill totaled $20,226.37; and the August 2007 bill totaled $5,253.97. W&S's total charges to Defendants was $94,412.19. *Id.* at ¶ 19 & Attachment 3. W&S sent Defendants monthly statements of account – statements never contested by Defendants. *Id.* & Attachment 4.

19.     Defendants never complained to W&S about the quality or quantity of work that W&S was performing. Nor did Defendants ever complain outside the context of this lawsuit about the amount W&S charged for its legal services on behalf of Defendants. On the contrary, Doley promised on several occasions that payment was forthcoming. But that payment never came. *Id.* at ¶ 20; *see also* Declaration of Michael A. Mancusi at ¶ 6 (Ex. B).

20.     W&S applied the $10,000 retainer to amounts owed by Defendants to W&S. Thus, to date, Defendants owe W&S $84,412.19, plus interest. Declaration of Thomas M. Buchanan at ¶ 21 (Ex. A).

Respectfully submitted,

_____\s_____
Thomas Buchanan # 337907
Charles B. Klein # 450984
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C.  20006-3817
(202) 282-5000

*Counsel for Plaintiff*

Dated:  April 24, 2008

**Exhibit A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WINSTON & STRAWN, LLP,

       Plaintiff,

vs.                              Case No: 1:08-cv-00144 (RBW)

HAROLD E. DOLEY
and DOLEY SECURITIES, INC.,

       Defendants.

_____

**DECLARATION OF THOMAS M. BUCHANAN, ESQ.**

Pursuant to 28 U.S.C. § 1746, in lieu of a personal appearance, I, Thomas Buchanan, make the following statement:

1.      I am over 21 years of age, and I have personal knowledge of the facts and matters attested to in this Declaration, and I am competent to be a witness to the facts and matters attested to in this Declaration.

2.      I am a partner with Winston & Strawn LLP ("W&S"), which is an international law firm with offices throughout the United States and abroad.

**I.      The Defendants**

3.      Harold E. Doley is an experienced businessman.  According to the website of Doley Securities, Inc. ("DSI"), he is the founder of DSI, has been an individual seat holder on the New York Stock Exchange since 1973, and is an underwriting member of Lloyd's of London.  *See* Attachment 1 (Company Information).

4.      According to its website, DSI was founded in 1973.  It specializes in providing investment products and services to institutional clients, and its specialties include raising capital

for securities issuers, providing secondary market services for institutional investors, and furnishing financial advisory services to institutions, corporations, government and political subdivisions. *See id.* Chad Robert serves as the President of DSI.

## II.    Background

5.      Before Mr. Doley and DSI retained W&S, the Office of Thrift Supervision ("OTS") served on Defendants a subpoena for documents.  In response, Defendants produced thousands of pages of documents to the OTS.

6.      OTS issued a second subpoena to Defendants requesting additional documents and Mr. Doley's deposition.  In the early spring of 2007, after the return date of the second round of documents had already passed but before any documents were produced, Defendants approached W&S seeking legal counsel.

7.      Before W&S's representation of Defendants began, a partner of mine, Michael A. Mancusi, and I met in person with Messrs. Doley and Robert (who was representing DSI).  Mr. Mancusi and I explained to Messrs. Doley and Robert the legal work that would need to be done to properly represent them.  We explained that we needed to review the documents they already produced, and also review more documents that could be responsive to the second subpoena.  In addition, we explained that we would need to prepare Mr. Doley for his deposition and then defend his deposition.  At the meeting, Defendants indicated to me that they understood what W&S's work would entail.

8.      During that initial meeting, Mr. Mancusi and I also explained the fees and costs that would be associated with W&S's representation of Defendants.  In particular, I described that the matter would be billed on an hourly rate basis, in quarter-hour increments, and that my hourly billing rate was $595 and Mr. Mancusi's billing rate was $480.  We also explained that

associates of W&S may also be working on the matter, but they would bill at lower hourly rates. Both Messrs. Doley and Robert told Mr. Mancusi and me that they understood and accepted the fees and costs that were associated with W&S's work on the matter.

**III.    The Parties' Agreement**

9.      On April 19, 2007, before W&S conducted any work on behalf of Defendants, I sent to both Mr. Doley and DSI an engagement letter agreement to memorialize the parties' agreement. This agreement provides, among other things, that "the firm's clients will be clients Harold Doley and Doley Securities, Inc. The scope of our engagement will be limited to the representation of each of you in the [investigation being conducted by the OTS]." The agreement also states that W&S's "policy at the outset of an engagement with new clients is to outline not only the nature of the engagement, but also the basis on which the firm will provide legal services and bill for them." *See* Attachment 2 (Ltr. Agree. at 1 ).

10.     The letter agreement states, in part, that W&S's fees for work on the matter would be determined on an hourly basis. I provided Defendants with my then-current hourly rate of $595, as well as the hourly rate ranges for partners, associates, and legal assistants. *See id.* (Ltr. Agree. at ¶ 2)

11.     The letter agreement also states that there would be costs associated with W&S's representation of Defendants in addition to W&S's legal fees. *See id.* (Ltr. Agree. at ¶ 3).

12.     The letter agreement also states that W&S renders on-account bills monthly and expects its clients to pay account statements within 30 days. *See id.* (Ltr. Agree. at ¶ 4).

13.     The letter agreement also requested that Defendants pay a "$10,000 retainer to initiate the engagement" and explained that "[t]his retainer will be applied against ongoing fees and expenses." *See id.* (Ltr. Agree. at ¶ 10).

14.    Mr. Doley signed the letter agreement on April 20, 2007, on his behalf, and Mr. Robert signed the engagement letter on April 20, 2007, on behalf of DSI.    In the letter agreement, both Mr. Doley and DSI acknowledged that they were given the opportunity to consult with independent counsel before signing the engagement letter.  *See id.* (Ltr. Agree. at 4).

15.    Mr. Doley and DSI paid the $10,000 retainer on May 23, 2007.

## IV.    W&S's Performance Under The Agreement

16.    W&S performed legal services on behalf of Defendants after the parties executed the engagement letter agreement.  First, there was a dispute over what OTS claimed Defendants produced pursuant to the first subpoena, and what Defendants believed that they produced.  In connection with this dispute, W&S had to review the thousands of pages of documents that were produced pursuant to the first subpoena and then meet with OTS representatives to compare what they received to what Defendants believed was produced.  Second, W&S needed to review thousands of additional pages to determine if Defendants needed to supplement their production based on the second OTS subpoena.  As those documents were due before W&S even began its representation of Defendants, W&S had to conduct their document review over a short period of time, and the firm did produce additional documents on behalf of Defendants.  Third, W&S had to prepare Doley for his deposition.  The firm also defended Doley's deposition.  Finally, W&S provided legal advice to Defendants regarding certain purchases of stock.

17.    This legal work was performed by me, Mr. Mancusi, and an associate.  As described in the letter agreement, my billing rate was $595.  Mr. Mancusi's billing rate was $480, and Mr. Court billed at a rate of $365.  *See* Attachment 3 (Invoices).

18.    In total W&S devoted 215.25 of legal work on behalf of Defendants.    Mr. Mancusi billed 102 hours, Mr. Court billed 101 hours, and I billed 12.25 hours.    All of this work was appropriate and necessary to W&S's representation of Defendants    *See id* (Invoices).

**V.    Defendants' Breach Of The Agreement**

19.    W&S sent three bills to Defendants in June, July and August of 2007.    The June bill totaled $68,931.85, the July bill totaled $20,226.37, and the August bill totaled $5,253.97. All three bills not only described the total amount of charges, but also gave a description of the work performed by Mr. Mancusi, Mr. Court and me.    The total charges to Defendants was $94,412.19.    *See id* (Invoices).    W&S sent Defendants monthly statements of account – statements Defendants never contested.    *See* Attachment 4 (Statements of Account).

20.    Defendants never complained to W&S about the quality or quantity of work that W&S was performing.    Nor did Defendants ever complain outside the context of this lawsuit about the amount W&S charged for its legal services on behalf of Defendants.    On the contrary, Mr. Doley promised me on several occasions that payment was forthcoming.    But that payment never came.

21.    W&S applied the $10,000 retainer to amounts owed by Defendants to the law firm.    To date, Defendants owe W&S $84,412.19.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on April 23, 2008.

Thomas M. Buchanan

6

# ATTACHMENT 1



**Board of Directors**
**Company Bios**
**Press Releases**

Home
Message from Founder
Underwriting
Investment Banking
Brokerage Services
Direct Access

Doley Securities, Inc., founded in 1973, can offer an assortment of brokerage, trading, financial advisory and investment banking services to institutions, government organizations, and selected individuals.

We complete daily brokerage and trading transactions on behalf of our clients and for our own portfolio. Our specialties include raising capital for securities issuers, providing secondary market services for institutional investors, and furnishing financial advisory services to institutions, corporations, government and political subdivisions.

Harold E. Doley, Jr., the firm's founder and President, holds a seat on the New York Stock Exchange since 1973. He is also an underwriting member of Lloyd's of London. Working with Mr. Doley is a team of experts with diverse backgrounds in finance, law, and government. They have established valuable relationships that give us wide access to many important financing sources. Our experienced support staff is skilled in using state-of-the-art automated services now available to the modern investment banking firm.

Our effective participation in the capital markets enhances our value to securities issuers, institutional purchasers and the investment banking community. We maintain continuous contact with world markets and employ market-sensitive database and reporting services. Using one of the most comprehensive information systems available, we provide clients with the highest degree of timely service that today's technology and analytical procedures can afford. We constantly receive and analyze information on foreign exchange rates, commodities, Treasury prices, stocks and bonds, financial news and other relevant data, and we transmit that information to our clients instantly.

Doley Securities is continually increasing its sphere of influence. We maintain a presence in New Orleans, gateway to the lucrative trade markets of Latin America and in New York City, still the leading financial capital of the world. In addition, we are continually expanding our international interests, as evidenced by our participation in global financings.

Doley Securities has been successful because of a unique ability to identify and use the common goals and interests of people with diverse beliefs for mutual benefit.

*Member of SBA, Hall of Fame. Read more....*

All content therein provided by Doley Securities. Copyright © 2008. All Rights Reserved.

**ATTACHMENT 2**

# WINSTON & STRAWN LLP

| | | |
|---|---|---|
| 35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703 | 1700 K STREET, N.W.<br>WASHINGTON, D.C. 20006-3817 | 333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543 |
| 43 RUE DU RHONE<br>1204 GENEVA, SWITZERLAND | (202) 282-5000 | 200 PARK AVENUE<br>NEW YORK, NEW YORK 10166-4193 |
| BUCKLERSBURY HOUSE<br>3 QUEEN VICTORIA STREET<br>LONDON, EC4N 8NH | FACSIMILE (202) 282-5100 | 25 AVENUE MARCEAU<br>75116 PARIS, FRANCE |
| | www.winston.com | 101 CALIFORNIA STREET<br>SAN FRANCISCO, CALIFORNIA 94111-5894 |

THOMAS M. BUCHANAN
(202) 282-5767
tbuchanan@winston.com

April 19, 2007

Harold E. Doley                           Doley Securities, Inc.
67 N. Broadway                            616 Baronne Street
Irvington, NY  10533                      New Orleans, LA  70113

Dear Mr. Doley:

Thank you for selecting Winston & Strawn LLP to represent each of you in the investigation being conducted by the Office of the Thrift Supervision (the "Lawsuit"). Our firm's policy at the outset of an engagement with new clients is to outline not only the nature of the engagement, but also the basis on which the firm will provide legal services and bill for them.

1.     <u>Nature of Engagement.</u>  As we discussed, the firm's clients will be Clients Harold Doley and Doley Securities, Inc.  The scope of our engagement will be limited to the representation of each of you in the Lawsuit.

2.     <u>Fees.</u>  Although I will be the attorney responsible for this engagement, portions of the work may be performed by other firm attorneys and legal assistants, as necessary. My current hourly rate is $595.00.  Our hourly rates for partners range from $405.00 to $845.00; for associates, from $200.00 to $590.00; and for legal assistants, from $135.00 to $285.00.  Our billing rates are subject to adjustment from time to time, usually in January of each year.  Each of you will be jointly and severally liable for the total fees and costs of representing you collectively in the Lawsuit.

3.     <u>Costs.</u>  In addition to our fees, our bills will include allocable charges for costs and expenses incurred in performing our services, such as printing and reproduction services, mail, messenger and delivery services, computerized research, travel (including mileage, parking, air or rail fare, lodging, meals, taxi or car rental), telephone, facsimile or data transmission, secretarial and support staff overtime (when necessitated by the client's work), court costs and filing fees and other litigation support services, such as document scanning, coding and printing.  Unless other arrangements are made, certain expenses (such as expert witnesses' fees and court reporters' charges) will be billed directly to you and will not be our responsibility.

WINSTON & STRAWN LLP

Harold E. Doley
Doley Securities, Inc.
April 19, 2007
Page 2


        4.    Billing Arrangements.  We render on-account bills monthly.  Our
statements generally will be prepared and mailed to each of you during the month following the
month in which services are rendered.  The firm expects that its clients will pay statements
within 30 days.  We reserve the right to defer providing services or to discontinue our
representation if billed amounts are not paid when due.

        5.    Client Documents:  We will maintain any necessary documents (including
any electronic copies) relating to this matter in our client files.  At the conclusion of the matter
(or earlier, if appropriate), it is your obligation to advise us as to which, if any, of the documents
in our files you wish us to make available to you.  These documents will be delivered to you
within a reasonable time after receipt of payment for outstanding fees and costs, subject to
applicable rules of attorney conduct.  We will retain any remaining documents in our files for a
certain period of time, after which we will destroy them in accordance with our record retention
program.

        6.    Joint Representation Agreement and Waiver.  Because joint
representations involve unique issues of conflicts of interest and confidentiality, we wanted to
clarify the terms of our joint representation as set forth herein.  Ideally each one of you would be
represented by separate counsel in the Lawsuit, but we recognize that there are considerations of
cost as well as strategic advantages for each of you in being jointly represented by us.  Winston
& Strawn LLP is willing to undertake such multiple representation in the Lawsuit so long as the
following terms and conditions are understood and agreed to by each of you:

        Harold Doley and Doley Securities, Inc. each waive any objection to, or any
possible conflict in, our joint representation of Clients Harold Doley and Doley Securities, Inc. in
the Lawsuit, and each consents to our joint representation of Harold Doley and Doley Securities,
Inc. in the Lawsuit.

        Harold Doley and Doley Securities, Inc. acknowledge and agree that
communications between Winston & Strawn LLP and any or all of you concerning the Lawsuit
will be treated by us as confidential and not disclosed to anyone other than the two of you
without your consent or as otherwise provided by law.  Harold Doley and Doley Securities, Inc.
further acknowledge and agree that whatever communications or information Winston & Strawn
LLP receives from any one or more of you concerning the Lawsuit will be shared with each of
you as we deem appropriate.  In particular, if we receive material information about any one of
you from one of the others that we believe Harold Doley and Doley Securities, Inc. should have
in order to make decisions regarding your individual interests, we will give you that information.

**WINSTON & STRAWN** LLP

Harold E. Doley
Doley Securities, Inc.
April 19, 2007
Page 3

Harold Doley and Doley Securities, Inc. acknowledge and agree that there exists the possibility that a conflict of interest may arise in the course of the multiple representation by Winston & Strawn LLP. Harold Doley and Doley Securities, Inc. acknowledge and agree that in the event a conflict of interest arises regarding the multiple representation by Winston & Strawn LLP, then we may withdraw from the representation of the client who has created the conflict (the "conflicted client") and may continue to represent the other client or clients. In such event, the conflicted client understands that he/she would be responsible for obtaining his/her own legal representation and for the cost of that representation.

Harold Doley and Doley Securities, Inc. acknowledge and agree that if Winston & Strawn LLP withdraws as one or more of their attorneys, we may continue to represent the other remaining clients, even if such representation is contrary to the interests of the conflicted client. Moreover, in the unlikely event that you commence litigation against one another regarding the subject of the joint representation, you each understand that our advice to you and our prior communications with each of you during the joint representation may not be shielded from disclosure in such litigation. Finally, in the event a conflict of interest arises regarding the multiple representation by Winston & Strawn LLP, a court may nevertheless disqualify us from continuing our representation of any of you, notwithstanding the terms of this Agreement. We are advising you of these possibilities solely to comply with our ethical requirements and are not suggesting that you may have claims against one another.

7.    Affiliate Waiver: For all matters which you may, from time to time, request our assistance, Winston & Strawn LLP's clients will be Harold Doley and Doley Securities, Inc. and not any parent, subsidiaries or affiliates of Doley Securities, Inc. This letter confirms that Harold Doley and Doley Securities, Inc. acknowledges and agrees that it is a separate entity from its parent, subsidiaries and affiliates for conflicts of interest purposes and that our representation of Harold Doley and Doley Securities, Inc. does not give rise to an attorney-client relationship for conflicts of interest purposes with any parent, subsidiary or affiliates of Harold Doley and Doley Securities, Inc. Harold Doley and Doley Securities, Inc. further acknowledges that Winston & Strawn LLP may have in the past represented, currently represent, or in the future represent, other clients whose interests are adverse to the parent, subsidiaries or affiliates of Harold Doley and Doley Securities, Inc. and that such representations by Winston & Strawn LLP will not give rise to a conflict of interest with Harold Doley and Doley Securities, Inc. Harold Doley and Doley Securities, Inc. also agrees that during the course of Winston & Strawn LLP's representation of Harold Doley and Doley Securities, Inc., Harold Doley and Doley Securities, Inc. will not provide to Winston & Strawn LLP any confidential information regarding its parent, subsidiaries or affiliates.

WINSTON & STRAWN LLP

8. <u>Insurance Coverage</u>. Harold Doley and Doley Securities, Inc. may have insurance policies that would provide a defense to claims asserted against Harold Doley and Doley Securities, Inc. in this matter. We urge you to consult with your insurance brokers to locate all potentially relevant policies and to tender the defense to all potentially relevant insurers. Depending on the type of policy, both current policies and previous ones (now expired) may be relevant, and policies held by related companies may be relevant. If a policy does have the potential for coverage, it is important that Harold Doley and Doley Securities, Inc. tender the defense promptly. Generally insurers reimburse defense expenses only from the moment of tender; in addition, insurers may deny a defense entirely when a tender has been made too late in the case. We count on our clients to work with their brokers to make all relevant tenders. If you would like our assistance with any tender, please request us specifically to do so, and we will evaluate potential conflicts related to a tender to determine whether we may be able to assist you. If an insurer does agree to reimburse defense expenses of this case, Harold Doley and Doley Securities, Inc. agrees that it will pay our invoices directly and promptly upon their presentation and that you will in turn seek reimbursement from the issuer, unless the insurer retains us directly on your behalf.

9. <u>Termination of Representation.</u> A client has the right at any time to terminate our services and representation upon written notice to the firm. Such termination shall not, however, relieve each of the clients of the obligation to pay for all services already rendered, including work in progress and remaining incomplete at the time of termination, and to pay for all expenses incurred on behalf of the clients through the date of termination.

10. <u>Replenishable Retainer</u>: We would request a $10,000 retainer to initiate the engagement. This retainer will be applied against ongoing fees and expenses. We reserve the right to request that you replenish the retainer when and if it becomes exhausted. Advances of legal fees and costs will become our property upon receipt but at the conclusion of our representation we will refund any credit balance to you, without interest.

Harold Doley and Doley Securities, Inc. acknowledge and agree that, prior to entering this Agreement, they have been advised and have had the opportunity to consult with independent counsel (not Winston & Strawn LLP) regarding the terms and conditions of this Agreement.

If after consideration, each of you consent and agree to be jointly represented by Winston & Strawn LLP in the Lawsuit in accordance with the above terms and conditions, please sign the enclosed copy of this letter in the space provided below and return it to me. Should you have any questions, please call me.

WINSTON & STRAWN LLP

   We appreciate the chance to be of service and look forward to working with each of you.  I am enclosing a firm brochure and my resume for your information.

Sincerely,

Thomas M. Buchanan

Enclosures

ACCEPTED AND AGREED to by:

Harold Doley

Date: 4-20-07

Doley Securities, Inc.

Date: 4/20/07

WINSTON & STRAWN LLP

## WINSTON & STRAWN LLP
## GENERAL TERMS AND CONDITIONS OF ENGAGEMENT

The time for which a client will be charged is based on quarter hour increments, and will include, but will not necessarily be limited to, telephone and office conferences with the client, witnesses, other counsel, consultants, government personnel and others; conferences among our personnel; factual investigation; legal research; drafting and review of letters, memoranda, pleadings, briefs, and other documents; reviewing files in preparation for proceedings or meetings; responding to client requests to provide information to their auditors; responding to client requests to provide other information, such as non-standard billing information or information required by client procurement practices, third parties or parent organizations; travel time that would otherwise be available for productive work on regular business days, but which cannot be so devoted because of the circumstances of travel; waiting time in court or in connection with administrative proceedings; and time in propounding or responding to interrogatories, preparing for and participating in depositions or other forms of discovery.

In addition to fees, our bills will include allocable charges for costs and expenses incurred in performing our services, such as printing and reproduction services, mail, messenger and delivery services, computerized research, travel (including mileage, parking, air or rail fare, lodging, meals, taxi or car rental), telephone, facsimile or data transmission, secretarial and support staff overtime (when necessitated by the client's work), court costs and filing fees [and other litigation support services, such as document scanning, coding and printing]. Unless other arrangements are made, certain expenses (such as expert witnesses' fees and court reporters' charges) will be billed directly to you and will not be our responsibility.

We render on-account bills monthly. Our statements generally will be prepared and mailed to you during the month following the month in which services are rendered. The firm assumes that its clients ordinarily will pay statements within 30 days. We reserve the right to defer providing services or to discontinue our representation if billed amounts are not paid when due.

We will maintain any necessary documents (including any electronic copies) relating to this matter in our client files. At the conclusion of the matter (or earlier, if appropriate), it is your obligation to advise us as to which, if any, of the documents in our files you wish us to make available to you. These documents will be delivered to you within a reasonable time after receipt of payment for outstanding fees and costs, subject to applicable rules of attorney conduct. We will retain any remaining documents in our files for a certain period of time, after which we will destroy them in accordance with our record retention program.

A client has the right at any time to terminate our services and representation upon written notice to the firm. Such termination shall not, however, relieve the client of the obligation to pay for all services already rendered, including work in progress and remaining

WINSTON & STRAWN LLP

incomplete at the time of termination, and to pay for all expenses incurred on behalf of the client through the date of termination.

We reserve the right to withdraw from our representation if, among other things, the client fails to honor the terms of the engagement letter, the client fails to cooperate or follow our advice on a material matter, or any fact or circumstance would render our continued relationship unlawful or unethical or would otherwise authorize such termination subject to applicable rules of professional conduct. In the event that we terminate the engagement, we will take such steps as are reasonably practicable to protect your interests in the above matter, and you agree on behalf of the client that it will take all steps necessary to free us of any obligation to perform further, including the execution of any documents necessary to perfect our withdrawal, and further that we will be entitled to be paid for all services rendered and costs or expenses incurred on behalf of the client through the date of withdrawal. If the client so requests, we will suggest to you possible successor counsel and provide it with whatever documents you have provided to us. If permission for withdrawal is required by a court, we will promptly apply for such permission, and you agree on behalf of the client to engage successor counsel to represent the client.

DC:511034.1

2

**ATTACHMENT 3**

# WINSTON & STRAWN LLP

1700 K Street, N.W.
Washington, D.C. 20006-3817


TAX ID NO. 36-1975990


| | | |
|---|---|---|
| Harold Doley/Doley Securities | Invoice No. | 1993138 |
| Attn: Harold Doley | Invoice Date | 06/28/07 |
| 67 N. Broadway | Client Matter No. | 105438 |
| Irvington, NY 10533 | | |


**For Legal Services Rendered  Through May 31, 2007 In Connection With:**
**00001 OTS Investigation**


| | |
|---|---|
| Legal Services: | $68,716.25 |
| For disbursements and other charges incurred: | $215.60 |
| | |
| **Total of Services and Disbursements** | **$68,931.85** |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

| | |
|---|---|
| Invoice No. | 1993138 |
| Invoice Date | 06/28/07 |
| Page No. | 2 |

## 00001 OTS Investigation

| Date | Attorney/Other Prof | Hours | Description |
|---|---|---|---|
| 04/18/07 | M. Mancusi | 3.25 | Conference with T. Buchanan re OTS investigation; telephone conference with T. Buchanan and H. Doley re same; research OTS rulings re IFSB; review and analyze OTS subpoena |
| 04/19/07 | T. Buchanan | 0.50 | Telephone call to client |
| 04/19/07 | M. Mancusi | 4.50 | Review documents provided by H. Doley re OTS investigation of IFSB |
| 04/20/07 | T. Buchanan | 0.50 | Meet with M. Mancusi; telephone call to client |
| 04/20/07 | M. Mancusi | 3.75 | Telephone conference with N. Kurtin re OTS subpoena; conference with T. Buchanan re same; telephone conference with H. Doley re contact with OFS; review documents |
| 04/21/07 | M. Mancusi | 0.50 | Review emails from H. Doley and T. Buchanan; draft response to same |
| 04/23/07 | T. Buchanan | 0.50 | Correspondence with M. Mancusi |
| 04/23/07 | J. Court | 7.00 | Review subpoena and documents relating to IFSB/Doley matter; attend meeting at OTS with M. Mancusi to review and analyze documents provided to OTS by Doley securities and meet with N. Kurtin regarding OTS concerns about change in control issues; telephone conference with C. Roberts at Doley Securities |
| 04/23/07 | M. Mancusi | 6.75 | Review documents produced to OTS; conference with N. Kurtin re same; conference with T. |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

| | |
|---|---|
| Invoice No. | 1993138 |
| Invoice Date | 06/28/07 |
| Page No. | 3 |

**00001 OTS Investigation**

| Date | Attorney/Other Prof | Hours | Description |
|---|---|---|---|
| | | | Buchanan re OTS document review; review binder pleadings; telephone conference with D. Mangold re Doley deposition transcript; telephone conference with N. Kurtin re rescheduling H. Doley deposition; review documents; conference with T. Buchanan re same; telephone conference with H. Doley re contact with OTS; draft request for documents for H. Doley |
| 04/24/07 | T. Buchanan | 0.50 | Telephone call to M. Mancusi; review correspondence |
| 04/24/07 | J. Court | 3.00 | Review documents relating to IFSB and involvement of Doley and possible change in control issues |
| 04/24/07 | M. Mancusi | 3.50 | Telephone conference with N. Kurtin re deposition of H. Doley; telephone conference with H. Doley re same; review documents; telephone conference with Doley Securities and J. Court re missing statements; review pleadings in civil action |
| 04/25/07 | M. Mancusi | 4.50 | Telephone conference with H. Doley re OTS deposition; telephone conference with N. Kurtin re same; draft email update to T. Buchanan re same; review additional documents provided by H. Doley |
| 04/26/07 | T. Buchanan | 0.50 | Review correspondence |
| 04/26/07 | J. Court | 4.25 | Review incoming materials sent by Doley & Doley Securities; assess change in control issues |
| 04/26/07 | M. Mancusi | 5.25 | Review documents provided by Doley Securities; review change in Bank Control requirements; |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

| | |
|---|---|
| Invoice No. | 1993138 |
| Invoice Date | 06/28/07 |
| Page No. | 4 |

**00001 OTS Investigation**

| Date | Attorney/Other Prof | Hours | Description |
|---|---|---|---|
| | | | conference with J. Court re issue memorandum; telephone conference with Doley Securities re document production |
| 04/27/07 | T. Buchanan | 0.50 | Meet with M. Mancusi |
| 04/27/07 | J. Court | 8.50 | Review documents relating to Doley/IFSB/Bender litigation; research change in control requirements and draft memorandum to M. Mancusi advising on same |
| 04/27/07 | M. Mancusi | 6.50 | Review additional documents produced by Doley Securities; draft memorandum to T. Buchanan re same; review and revise draft issue memorandum |
| 04/30/07 | T. Buchanan | 0.50 | Meet with M. Mancusi |
| 04/30/07 | J. Court | 2.50 | Revise and edit memorandum regarding change in control issues |
| 04/30/07 | M. Mancusi | 3.75 | Telephone conference with H. Doley re contact with other witnesses; telephone conference with P. Strand re OTS investigation; telephone conference with G. Fields re same; review documents; revise issue memorandum |
| 05/01/07 | T. Buchanan | 0.50 | Meet with M. Mancusi; review deposition |
| 05/02/07 | T. Buchanan | 0.50 | Meet with M. Mancusi; correspondence with M. Mancusi |
| 05/02/07 | J. Court | 2.25 | Review H. Doley deposition |
| 05/07/07 | J. Court | 6.00 | Review deposition transcripts and materials relating to OTS inquiry and Bender litigation |
| 05/08/07 | M. Mancusi | 2.75 | Telephone conference with S. Neal regarding OTS |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

| | |
|---|---|
| Invoice No. | 1993138 |
| Invoice Date | 06/28/07 |
| Page No. | 5 |

**00001 OTS Investigation**

| Date | Attorney/Other Prof | Hours | Description |
|---|---|---|---|
| | | | investigation; review documents |
| 05/11/07 | M. Mancusi | 4.25 | Review documents; telephone conference with client; conference with T. Buchanan and J. Court |
| 05/14/07 | M. Mancusi | 2.75 | Review deposition transcripts and documents provided by Doley Securities |
| 05/15/07 | T. Buchanan | 0.50 | Telephone call to M. Mancusi |
| 05/15/07 | M. Mancusi | 3.50 | Review documents; conference with J. Court regarding same; telephone conference with S. Neal regarding deposition transcripts; telephone conference with G. Fields regarding deposition of L. Delaney |
| 05/17/07 | J. Court | 3.75 | Review and analyze materials relating to Bender litigation and OTS inquiry on securities law filing requirements and potential change in control issues |
| 05/18/07 | J. Court | 7.50 | Review and analyze materials relating to Bender litigation and OTS inquiry; conference with M. Mancusi regarding same |
| 05/21/07 | J. Court | 4.50 | Review and analyze materials relating to OTS inquiry; develop summary of relationships between Doley Securities customers holding IFSB shares |
| 05/21/07 | M. Mancusi | 2.75 | Review documents; telephone conference with Doley Securities regarding December 2005 letter to OTS |
| 05/22/07 | J. Court | 6.50 | Review and analyze materials relating to Bender litigation and OTS inquiry |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

| | |
|---|---|
| Invoice No. | 1993138 |
| Invoice Date | 06/28/07 |
| Page No. | 6 |

**00001 OTS Investigation**

| Date | Attorney/Other Prof | Hours | Description |
|---|---|---|---|
| 05/22/07 | M. Mancusi | 3.50 | Telephone conference with Doley Securities; review documents; prepare for OTS deposition |
| 05/23/07 | J. Court | 6.00 | Review and analyze materials relating to Bender litigation and OTS inquiry; assess regulatory implications of allegations and identify relevant issues; conference with M. Mancusi regarding same and need for additional depositions and other materials |
| 05/23/07 | M. Mancusi | 2.50 | Prepare for OTS deposition; review documents; conference with J. Court and T. Buchanan regarding same |
| 05/24/07 | T. Buchanan | 1.00 | Meet with M. Mancusi and J. Court |
| 05/24/07 | J. Court | 6.50 | Conference with T. Buchanan and M. Mancusi regarding upcoming OTS deposition; identify issues and potential concerns of OTS; obtain and review additional depositions |
| 05/24/07 | M. Mancusi | 4.25 | Review deposition and hearing transcripts |
| 05/25/07 | J. Court | 3.00 | Review additional depositions from Bender litigation |
| 05/25/07 | M. Mancusi | 5.25 | Review deposition and hearing transcripts from civil case; prepare for OTS deposition |
| 05/26/07 | M. Mancusi | 3.75 | Review deposition and hearing transcripts |
| 05/29/07 | J. Court | 1.75 | Review additional depositions received; telephone conferences with P. Day (Doley) and M. Mancusi |
| 05/30/07 | T. Buchanan | 0.50 | Meeting with J. Court; telephone call to M. Mancusi |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

Invoice No.    1993138
Invoice Date   06/28/07
Page No.       7

**00001 OTS Investigation**

| Date | Attorney/Other Prof | Hours | Description |
|------|---------------------|-------|-------------|
| 05/30/07 | J. Court | 1.75 | Telephone conferences with P. Day at Doley Securities regarding additional materials needed; conference with M. Mancusi; review depositions |
| 05/31/07 | J. Court | 1.00 | Telephone conferences with M. Mancusi, H. Doley, and C. Robert regarding materials relating to OTS inquiry; review materials regarding same and depositions from Bender litigation |
| | **Total Hours** | **159.75** | |

**Total for Legal Services**          **$68,716.25**

### Timekeeper Summary

| Attorney/Other Prof | Hours | Rate | Fees Billed |
|---------------------|-------|------|-------------|
| T. Buchanan | 6.50 | 595.00 | 3,867.50 |
| M. Mancusi | 77.50 | 480.00 | 37,200.00 |
| J. Court | 75.75 | 365.00 | 27,648.75 |
| **Total Attorney/Other Prof** | **159.75** | | **68,716.25** |

**Disbursements & Other Charges**

| Description | Amount |
|-------------|--------|
| Printing/Reproduction Services | 215.60 |
| **Total Disbursements & Other Charges** | **$215.60** |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

| | |
|---|---|
| Invoice No. | 1993138 |
| Invoice Date | 06/28/07 |
| Page No. | 8 |

**00001 OTS Investigation**

**Total Due This Invoice**                    **$68,931.85**

# WINSTON & STRAWN LLP

1700 K Street, N.W.
Washington, D.C. 20006-3817

TAX ID NO. 36-1975990

| | | |
|---|---|---|
| Harold Doley/Doley Securities | Invoice # | 1993138 |
| Attn: Harold Doley | Invoice Date | 06/28/07 |
| 67 N. Broadway | Client Matter No. | 105438.00001 |
| Irvington, NY 10533 | | |

## Client Remittance Copy

| | |
|---|---|
| Total Fees | $68,716.25 |
| Total Disbursements | 215.60 |
| **Total Due This Invoice** | **$68,931.85** |

| Remittance Address | | For Wire Transfers/ACH Payments |
|---|---|---|
| **Via Mail:**<br>**Winston & Strawn LLP**<br>**36235 Treasury Center**<br>**Chicago, IL 60694-6200** | **Via Delivery Service:**<br>**c/o Harris Bank Remittance**<br>**Winston & Strawn LLP**<br>**311 W. Monroe**<br>**7th Floor, Lockbox #36235**<br>**Chicago, IL 60606** | **Harris Bank - Chicago, Illinois**<br>**ABA/Routing Number: 071 000 288**<br>**Account Number: 449-675-8**<br>**Account Name: Winston & Strawn LLP**<br>**SWIFT Code: HATRUS44 (International Wires)**<br>**Please reference invoice/client matter number.** |

# WINSTON & STRAWN LLP

1700 K Street, N.W.
Washington, D.C. 20006-3817

TAX ID NO. 36-1975990

| | |
|---|---|
| Harold Doley/Doley Securities | Invoice #         1993138 |
| Attn: Harold Doley | Invoice Date       06/28/07 |
| 67 N. Broadway | Client Matter No.    105438.00001 |
| Irvington, NY 10533 | |

## Remittance Advice
Please include this remittance page with your payment

| | |
|---|---|
| Total Fees | $68,716.25 |
| Total Disbursements | 215.60 |
| **Total Due This Invoice** | **$68,931.85** |

| Remittance Address | | For Wire Transfers/ACH Payments |
|---|---|---|
| **Via Mail:**<br>**Winston & Strawn LLP**<br>**36235 Treasury Center**<br>**Chicago, IL 60694-6200** | **Via Delivery Service:**<br>**c/o Harris Bank Remittance**<br>**Winston & Strawn LLP**<br>**311 W. Monroe**<br>**7th Floor, Lockbox #36235**<br>**Chicago, IL 60606** | **Harris Bank - Chicago, Illinois**<br>**ABA/Routing Number: 071 000 288**<br>**Account Number: 449-675-8**<br>**Account Name: Winston & Strawn LLP**<br>**SWIFT Code: HATRUS44 (International Wires)**<br>**Please reference invoice/client matter number.** |

# WINSTON & STRAWN LLP

1700 K Street, N.W.
Washington, D.C. 20006-3817

TAX ID NO. 36-1975990

Harold Doley/Doley Securities
Attn: Harold Doley
67 N. Broadway
Irvington, NY 10533

| | |
|---|---|
| Invoice No. | 1996231 |
| Invoice Date | 07/18/07 |
| Client Matter No. | 105438 |

**For Legal Services Rendered  Through June 30, 2007 In Connection With:**
**00001 OTS Investigation**

| | |
|---|---|
| Legal Services: | $19,376.25 |
| For disbursements and other charges incurred: | $850.12 |
| **Total of Services and Disbursements** | **$20,226.37** |
| Prior Balance Due | 68,931.85 |
| **Total Now Due and Owing** | **$89,158.22** |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

| | |
|---|---|
| Invoice No. | 1996231 |
| Invoice Date | 07/18/07 |
| Page No. | 2 |

**00001 OTS Investigation**

| Date | Attorney/Other Prof | Hours | Description |
|---|---|---|---|
| 06/01/07 | J. Court | 0.75 | Telephone conferences with M. Mancusi, C. Robert, N. Kurtin (OTS); review issues regarding same |
| 06/03/07 | J. Court | 8.00 | Prepare materials for tomorrow's meeting with H. Doley; review depositions of other individuals involved in Bender litigation |
| 06/04/07 | T. Buchanan | 3.00 | Prepare client for deposition; meet with M. Mancusi and court |
| 06/04/07 | J. Court | 12.25 | Review materials in preparation of H. Doley's preparatory meeting today for OTS deposition; organize materials, finalize binders; meet with H. Doley, T. Buchanan, and M. Mancusi regarding same |
| 06/04/07 | M. Mancusi | 6.50 | Review deposition binders; review prior deposition testimony; conference with T. Buchanan and J. Court regarding H. Doley deposition; conference with H. Doley, T. Buchanan, and J. Court to prepare for deposition |
| 06/05/07 | T. Buchanan | 1.50 | Meet with M. Mancusi re deposition; meet with client |
| 06/05/07 | J. Court | 1.00 | Meet with H. Doley in order to prepare for today's deposition at the OTS |
| 06/05/07 | M. Mancusi | 8.25 | Prepare for deposition; conference with H. Doley regarding same; attend H. Doley deposition; conference with T. Buchanan and J. Court regarding deposition |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

| | |
|---|---|
| Invoice No. | 1996231 |
| Invoice Date | 07/18/07 |
| Page No. | 3 |

**00001 OTS Investigation**

| Date | Attorney/Other Prof | Hours | Description |
|------|---------------------|-------|-------------|
| 06/27/07 | T. Buchanan | 0.25 | Review letter |
| 06/27/07 | M. Mancusi | 0.50 | Telephone conference with H. Doley regarding draft letter to OTS and status of OTS investigation; telephone conference with C. Robert regarding draft letter |
| 06/28/07 | M. Mancusi | 2.50 | Review and analyze draft letter provided by H. Doley; compare draft letter to final version submitted to OTS |

| | | | |
|---|---|---|---|
| **Total Hours** | | **44.50** | |

**Total for Legal Services**          **$19,376.25**

## Timekeeper Summary

| Attorney/Other Prof | Hours | Rate | Fees Billed |
|---------------------|-------|------|-------------|
| T. Buchanan | 4.75 | 595.00 | 2,826.25 |
| M. Mancusi | 17.75 | 480.00 | 8,520.00 |
| J. Court | 22.00 | 365.00 | 8,030.00 |
| **Total Attorney/Other Prof** | **44.50** | | **19,376.25** |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

| | |
|---|---|
| Invoice No. | 1996231 |
| Invoice Date | 07/18/07 |
| Page No. | 4 |

---

**00001 OTS Investigation**

---

### Disbursements & Other Charges

| Description | Amount |
|---|---|
| Electronic Brief | 740.00 |
| Printing/Reproduction Services | 109.20 |
| Telecommunication Services | 0.92 |
| **Total Disbursements & Other Charges** | **$850.12** |
| **Total Due This Invoice** | **$20,226.37** |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

| | |
|---|---|
| Invoice No. | 1996231 |
| Invoice Date | 07/18/07 |
| Page No. | 5 |

**00001 OTS Investigation**

### Summary of Accounts Receivable

| Date of Invoice | Invoice Number | Amount | Payments/ Adjustments | Balance Due |
|---|---|---|---|---|
| 06/28/07 | 1993138 | 68,931.85 | 0.00 | 68,931.85 |
| | | 68,931.85 | 0.00 | 68,931.85 |

**Total Balance Due**     **$68,931.85**

# WINSTON & STRAWN LLP

1700 K Street, N.W.
Washington, D.C. 20006-3817

TAX ID NO. 36-1975990

| | |
|---|---|
| Harold Doley/Doley Securities | |
| Attn: Harold Doley | |
| 67 N. Broadway | |
| Irvington, NY 10533 | |

| | |
|---|---|
| Invoice # | 1996231 |
| Invoice Date | 07/18/07 |
| Client Matter No. | 105438.00001 |

## Client Remittance Copy

| | |
|---|---|
| Total Fees | $19,376.25 |
| Total Disbursements | 850.12 |
| **Total Due This Invoice** | **$20,226.37** |
| Prior Balance Due | 68,931.85 |
| **Total Now Due** | **$89,158.22** |

| Remittance Address | | For Wire Transfers/ACH Payments |
|---|---|---|
| **Via Mail:**<br>**Winston & Strawn LLP**<br>**36235 Treasury Center**<br>**Chicago, IL 60694-6200** | **Via Delivery Service:**<br>**c/o Harris Bank Remittance**<br>**Winston & Strawn LLP**<br>**311 W. Monroe**<br>**7th Floor, Lockbox #36235**<br>**Chicago, IL 60606** | **Harris Bank - Chicago, Illinois**<br>**ABA/Routing Number: 071 000 288**<br>**Account Number: 449-675-8**<br>**Account Name: Winston & Strawn LLP**<br>**SWIFT Code: HATRUS44 (International Wires)**<br>**Please reference invoice/client matter number.** |

# WINSTON & STRAWN LLP

1700 K Street, N.W.
Washington, D.C. 20006-3817

TAX ID NO. 36-1975990

| | | |
|---|---|---|
| Harold Doley/Doley Securities | Invoice # | 1996231 |
| Attn: Harold Doley | Invoice Date | 07/18/07 |
| 67 N. Broadway | Client Matter No. | 105438.00001 |
| Irvington, NY 10533 | | |

## Remittance Advice
Please include this remittance page with your payment

| | |
|---|---|
| Total Fees | $19,376.25 |
| Total Disbursements | 850.12 |
| **Total Due This Invoice** | **$20,226.37** |
| Prior Balance Due | 68,931.85 |
| **Total Now Due and Owing** | **$89,158.22** |

| Remittance Address | | For Wire Transfers/ACH Payments |
|---|---|---|
| **Via Mail:**<br>**Winston & Strawn LLP**<br>**36235 Treasury Center**<br>**Chicago, IL 60694-6200** | **Via Delivery Service:**<br>**c/o Harris Bank Remittance**<br>**Winston & Strawn LLP**<br>**311 W. Monroe**<br>**7th Floor, Lockbox #36235**<br>**Chicago, IL 60606** | **Harris Bank - Chicago, Illinois**<br>**ABA/Routing Number: 071 000 288**<br>**Account Number: 449-675-8**<br>**Account Name: Winston & Strawn LLP**<br>**SWIFT Code: HATRUS44 (International Wires)**<br>**Please reference invoice/client matter number.** |

# WINSTON & STRAWN LLP

1700 K Street, N.W.
Washington, D.C. 20006-3817

TAX ID NO. 36-1975990

Harold Doley/Doley Securities
Attn: Harold Doley
67 N. Broadway
Irvington, NY 10533

| | |
|---|---|
| Invoice No. | 2002543 |
| Invoice Date | 08/28/07 |
| Client Matter No. | 105438 |

**For Legal Services Rendered  Through July 31, 2007 In Connection With:**
**00001 OTS Investigation**

Legal Services:                                                                    $5,021.25

For disbursements and other charges incurred:                      $232.72

| | |
|---|---|
| **Total of Services and Disbursements** | **$5,253.97** |
| Prior Balance Due | 89,158.22 |
| **Total Now Due and Owing** | **$94,412.19** |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

|  | Invoice No. | 2002543 |
|---|---|---|
|  | Invoice Date | 08/28/07 |
|  | Page No. | 2 |

## 00001 OTS Investigation

| Date | Attorney/Other Prof | Hours | Description |
|---|---|---|---|
| 07/03/07 | M. Mancusi | 0.75 | Compare draft letter to version produced to FDIC |
| 07/11/07 | M. Mancusi | 1.50 | Review response letters to FDIC; telephone conference with T. Buchanan regarding privilege and production issues |
| 07/13/07 | T. Buchanan | 0.75 | Correspondence with M. Mancusi; meet with M. Mancusi and J. Court |
| 07/13/07 | J. Court | 2.00 | Review various drafts of H. Doley's December 14, 2005 letter to the OTS; analyze variations in drafts; conference with M. Mancusi regarding same; conference with M. Mancusi and T. Buchanan; review additional materials sent by Doley Securities and telephone conference with M. Mancusi |
| 07/13/07 | M. Mancusi | 3.50 | Review additional draft letter provided by H. Doley; compare draft to final OTS response letter; conference with J. Court regarding same; telephone conference with H. Doley regarding additional document; telephone conference with C. Robert regarding same; review and revise draft transmittal letter to OTS; telephone conference with N. Kurtin regarding same |
| 07/16/07 | T. Buchanan | 0.25 | Email re OTS letter |
| 07/16/07 | J. Court | 1.25 | Prepare and submit letter to OTS enclosing draft versions of correspondence from H. Doley to OTS; conference with M. Mancusi regarding same |
| 07/16/07 | M. Mancusi | 1.00 | Review and revise draft transmittal letter; |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

| | |
|---|---|
| Invoice No. | 2002543 |
| Invoice Date | 08/28/07 |
| Page No. | 3 |

**00001 OTS Investigation**

| Date | Attorney/Other Prof | Hours | Description |
|---|---|---|---|
| | | | telephone conference with B. Veis regarding production of additional document and status of OTS investigation; conference with J. Court regarding same |
| | **Total Hours** | **11.00** | |

**Total for Legal Services**        **$5,021.25**

### Timekeeper Summary

| <u>Attorney/Other Prof</u> | <u>Hours</u> | <u>Rate</u> | <u>Fees Billed</u> |
|---|---|---|---|
| T. Buchanan | 1.00 | 595.00 | 595.00 |
| M. Mancusi | 6.75 | 480.00 | 3,240.00 |
| J. Court | 3.25 | 365.00 | 1,186.25 |
| **Total Attorney/Other Prof** | **11.00** | | **5,021.25** |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

| | |
|---|---|
| Invoice No. | 2002543 |
| Invoice Date | 08/28/07 |
| Page No. | 4 |

**00001 OTS Investigation**

### Disbursements & Other Charges

| Description | Amount |
|---|---|
| Certified Copies | 230.40 |
| Telecommunication Services | 2.32 |
| **Total Disbursements & Other Charges** | **$232.72** |
| | |
| **Total Due This Invoice** | **$5,253.97** |

# WINSTON & STRAWN LLP

Harold Doley/Doley Securities

| | |
|---|---|
| Invoice No. | 2002543 |
| Invoice Date | 08/28/07 |
| Page No. | 5 |

**00001 OTS Investigation**

## Summary of Accounts Receivable

| Date of Invoice | Invoice Number | Amount | Payments/ Adjustments | Balance Due |
|---|---|---|---|---|
| 06/28/07 | 1993138 | 68,931.85 | 0.00 | 68,931.85 |
| 07/18/07 | 1996231 | 20,226.37 | 0.00 | 20,226.37 |
| | | 89,158.22 | 0.00 | 89,158.22 |

**Total Balance Due**    **$89,158.22**

# WINSTON & STRAWN LLP

1700 K Street, N.W.
Washington, D.C. 20006-3817

TAX ID NO. 36-1975990

| | |
|---|---|
| Harold Doley/Doley Securities | Invoice #        2002543 |
| Attn: Harold Doley | Invoice Date        08/28/07 |
| 67 N. Broadway | Client Matter No.    105438.00001 |
| Irvington, NY 10533 | |

## Client Remittance Copy

| | |
|---|---:|
| Total Fees | $5,021.25 |
| Total Disbursements | 232.72 |
| **Total Due This Invoice** | **$5,253.97** |
| Prior Balance Due | 89,158.22 |
| **Total Now Due** | **$94,412.19** |

| Remittance Address | | For Wire Transfers/ACH Payments |
|---|---|---|
| **Via Mail:**<br>**Winston & Strawn LLP**<br>**36235 Treasury Center**<br>**Chicago, IL 60694-6200** | **Via Delivery Service:**<br>**c/o Harris Bank Remittance**<br>**Winston & Strawn LLP**<br>**311 W. Monroe**<br>**7th Floor, Lockbox #36235**<br>**Chicago, IL 60606** | **Harris Bank - Chicago, Illinois**<br>**ABA/Routing Number: 071 000 288**<br>**Account Number: 449-675-8**<br>**Account Name: Winston & Strawn LLP**<br>**SWIFT Code: HATRUS44 (International Wires)**<br>**Please reference invoice/client matter number.** |

# WINSTON & STRAWN LLP

1700 K Street, N.W.
Washington, D.C. 20006-3817

TAX ID NO. 36-1975990

| | |
|---|---|
| Harold Doley/Doley Securities | Invoice #  2002543 |
| Attn: Harold Doley | Invoice Date  08/28/07 |
| 67 N. Broadway | Client Matter No.  105438.00001 |
| Irvington, NY 10533 | |

## Remittance Advice
Please include this remittance page with your payment

| | |
|---|---|
| Total Fees | $5,021.25 |
| Total Disbursements | 232.72 |
| **Total Due This Invoice** | **$5,253.97** |
| Prior Balance Due | 89,158.22 |
| **Total Now Due and Owing** | **$94,412.19** |

| Remittance Address | | For Wire Transfers/ACH Payments |
|---|---|---|
| **Via Mail:**<br>**Winston & Strawn LLP**<br>**36235 Treasury Center**<br>**Chicago, IL 60694-6200** | **Via Delivery Service:**<br>**c/o Harris Bank Remittance**<br>**Winston & Strawn LLP**<br>**311 W. Monroe**<br>**7th Floor, Lockbox #36235**<br>**Chicago, IL 60606** | **Harris Bank - Chicago, Illinois**<br>**ABA/Routing Number: 071 000 288**<br>**Account Number: 449-675-8**<br>**Account Name: Winston & Strawn LLP**<br>**SWIFT Code: HATRUS44 (International Wires)**<br>**Please reference invoice/client matter number.** |

# ATTACHMENT 4

# WINSTON & STRAWN LLP

1700 K Street, N.W.
Washington, D.C. 20006-3817

TAX ID NO. 36-1975990

Harold Doley/Doley Securities
Attn: Harold Doley
67 N. Broadway
Irvington, NY 10533

January 16, 2008

T. Buchanan

### Statement of Account

| Invoice Number | Date of Invoice | Amount | Credits | Total Due |
|---|---|---|---|---|
| *Client Number 105438* | | | | |
| *00001 OTS Investigation* | | | | |
| 1993138 | June 28, 2007 | 68,931.85 | (10,000.00) | 58,931.85 |
| 1996231 | July 18, 2007 | 20,226.37 | 0.00 | 20,226.37 |
| 2002543 | August 28, 2007 | 5,253.97 | 0.00 | 5,253.97 |
| *Matter Total* | | 94,412.19 | 0.00 | $84,412.19 |

**Balance Outstanding** $84,412.19

Our records indicate the above referenced invoice(s) are outstanding. Please review your records and remit payment to **Winston & Strawn LLP** referencing client/matter name and number and invoice number(s).

If you have any questions concerning the amount(s) due or need a replacement copy of an invoice, please contact W&S Accounting at (312) 558-4175. Your prompt attention to this matter is very much appreciated. If remittance for the above has already been made, please accept our apologies and kindly disregard this notice.

| Remittance Address | | For Wire Transfers/ACH Payments |
|---|---|---|
| **Via Mail:**<br>**Winston & Strawn LLP**<br>**36235 Treasury Center**<br>**Chicago, IL 60694-6200** | **Via Delivery Service:**<br>**Winston & Strawn LLP**<br>**c/o Harris Bank Remittance**<br>**311 W. Monroe 7th Floor**<br>**Lock Box 36235**<br>**Chicago, IL 60606** | **Harris Bank - Chicago, Illinois**<br>**ABA/Routing Number: 071 000 288**<br>**Account Number: 449-675-8**<br>**Account Name: Winston & Strawn LLP**<br>**SWIFT Code: HATRUS44 (International Wires)**<br>**Please reference invoice/client matter number.** |

# WINSTON & STRAWN LLP

35 West Wacker Drive
Chicago, IL 60601-9703
TAX ID NO. 36-1975990

Harold Doley/Doley Securities                    March 13, 2008                    T. M. Buchanan
Attn: Harold Doley
67 N. Broadway
Irvington, NY 10533

### Statement of Account
*Invoices Over 60 Days*

**Client:** 105438 - Harold Doley/Doley Securities
**Matter:** 00001 - OTS Investigation

| Invoice Number | Date of Invoice | Amount | Credits | Total Due |
|---|---|---|---|---|
| 1993138 | June 28, 2007 | 68,931.85 | 10,000.00 | 58,931.85 |
| 1996231 | July 18, 2007 | 20,226.37 | 0.00 | 20,226.37 |
| 2002543 | August 28, 2007 | 5,253.97 | 0.00 | 5,253.97 |
| | **Total for Matter 00001** | | | **84,412.19** |
| | **Balance Outstanding** | | | **$84,412.19** |

Our records indicate the above referenced invoice(s) are outstanding. Please review your records and remit payment to **Winston & Strawn LLP** referencing client/matter name and number and invoice number(s).

If you have any questions concerning the amount(s) due or need a replacement copy of an invoice, please contact Edgar Gonzalez via email at EGonzale@Winston.com or call (312) 558-6384. Your prompt attention to this matter is very much appreciated. If remittance for the above has already been made, please accept our apologies and kindly disregard this notice.

| Remittance Address | | For Wire Transfers/ACH Payments |
|---|---|---|
| **Via Mail:**<br>Winston & Strawn LLP<br>36235 Treasury Center<br>Chicago, IL 60694-6200 | **Via Delivery Service:**<br>Winston & Strawn LLP<br>c/o Harris Bank Remittance<br>311 W. Monroe<br>Chicago, IL 60606 | Harris Bank - Chicago, Illinois<br>ABA/Routing Number: 071 000 288<br>Account Number: 449-675-8<br>Account Name: Winston & Strawn LLP<br>SWIFT Code: HATRUS44 (International Wires)<br>Please reference invoice/client matter number. |

# WINSTON & STRAWN LLP

35 West Wacker Drive
Chicago, IL 60601-9703
TAX ID NO. 36-1975990 Tel: (312) 558-9057

Harold Doley/Doley Securities
Attn: Harold Doley
67 N. Broadway
Irvington, NY 10533

April 16, 2008

T. M. Buchanan

### Statement of Account
*Invoices Over 60 Days*

**Client:** 105438 - Harold Doley/Doley Securities
**Matter:** 00001 - OTS Investigation

| Invoice Number | Date of Invoice | Amount | Credits | Total Due |
|---|---|---|---|---|
| 1993138 | June 28, 2007 | 68,931.85 | 10,000.00 | 58,931.85 |
| 1996231 | July 18, 2007 | 20,226.37 | 0.00 | 20,226.37 |
| 2002543 | August 28, 2007 | 5,253.97 | 0.00 | 5,253.97 |
| | **Total for Matter 00001** | | | **84,412.19** |
| | **Balance Outstanding** | | | **$84,412.19** |

Our records indicate the above referenced invoice(s) are outstanding. Please review your records and remit payment to **Winston & Strawn LLP** referencing client/matter name and number and invoice number(s).

If you have any questions concerning the amount(s) due or need a replacement copy of an invoice, please contact Edgar Gonzalez via email at EGonzale@Winston.com or call (312) 558-6384. Your prompt attention to this matter is very much appreciated. If remittance for the above has already been made, please accept our apologies and kindly disregard this notice.

| Remittance Address | | For Wire Transfers/ACH Payments |
|---|---|---|
| **Via Mail:**<br>Winston & Strawn LLP<br>36235 Treasury Center<br>Chicago, IL 60694-6200 | **Via Delivery Service:**<br>Winston & Strawn LLP<br>c/o Harris Bank Remittance<br>311 W. Monroe<br>Chicago, IL 60606 | Harris Bank - Chicago, Illinois<br>ABA/Routing Number: 071 000 288<br>Account Number: 449-675-8<br>Account Name: Winston & Strawn LLP<br>SWIFT Code: HATRUS44 (International Wires)<br>Please reference invoice/client matter number. |

**Exhibit B**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WINSTON & STRAWN, LLP,

      Plaintiff,

vs.                         Case No: 1:08-cv-00144 (RBW)

HAROLD E. DOLEY
and DOLEY SECURITIES, INC.,

      Defendants.

_____

## DECLARATION OF MICHAEL A. MANCUSI, ESQ.

Pursuant to 28 U.S.C. § 1746, in lieu of a personal appearance, I, Michael A. Mancusi, make the following statement:

1.      I am over 21 years of age, and I have personal knowledge of the facts and matters attested to in this Declaration, and I am competent to be a witness to the facts and matters attested to in this Declaration.

2.      I am a partner with Winston & Strawn LLP ("W&S"), which is an international law firm with offices throughout the United States and abroad.

3.      I, along with Tom Buchanan, another partner at W&S, and an associate performed legal services on behalf of Harold E. Doley and Doley Securities, Inc. in an investigation conducted by the Office of Thrift Supervision.

4.      W&S billed Defendants a total of $94,412.19 for these legal services.

5.      By September 2007, Defendants had not paid on any of the bills issued to them, with the exception of a $10,000 retainer. Mr. Buchanan thus asked me to call Mr. Doley to discuss the bills.

6.      On September 5, 2007, I called Mr. Doley about payment. Mr. Doley told me that Defendants would pay the invoices, but the payments would be made in installments over the next three months. Immediately after that call, I emailed Mr. Buchanan to update him with regard to my call with Mr. Dolely. In that email, I said: "I spoke with Doley. He said that he would be making payment in installments over the next three months. He will call me tomorrow with further details." *See* Attachment 1. At no point during my conversation with Mr. Doley did he in any way contest the W&S charges in the invoices, or criticize the legal services W&S provided to him.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on April 24, 2008.

Michael A. Mancusi

2

# ATTACHMENT 1

## Mancusi, Michael A.

| | |
|---|---|
| **From:** | Mancusi, Michael |
| **Sent:** | Wednesday, September 05, 2007 4:20 PM |
| **To:** | Buchanan, Thomas |
| **Subject:** | RE: Doley |

I spoke with Doley. He said that he would be making payment in installments over the next three months. He will call me tomorrow with further details.

| | |
|---|---|
| **From:** | Buchanan, Thomas |
| **Sent:** | Wednesday, September 05, 2007 8:22 AM |
| **To:** | Mancusi, Michael |
| **Subject:** | Doley |

Call him about payment. He hasn't paid. Tx.

1