UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WINSTON & STRAWN LLP,

    Plaintiff,

vs.                                                                              Case No: 1:08-cv-00144 (RBW)

HAROLD E. DOLEY
and DOLEY SECURITIES, INC.,

    Defendants.

_____

**PLAINTIFF'S ERRATA STATEMENT OF MATERIAL FACTS AS TO WHICH THERE EXISTS NO GENUINE ISSUE FOR TRIAL AND BUCHANAN DECLARATION IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Winston & Strawn LLP ("Winston & Strawn") has attached hereto a Corrected Statement of Facts as to Which There Exists No Genuine Issue for Trial ("Statement of Facts") and a Corrected Declaration of Thomas M. Buchanan ("Buchanan Declaration") in support of its motion for summary judgment, which was filed on April 24, 2008.

    After reading Defendants' Supplemental Memorandum to the Defendant's Motion to Dismiss or for a More Definite Statement ("Supplemental Motion to Dismiss"), Plaintiff realized that it inadvertently stated that Chad Robert attended a meeting among Thomas Buchanan and Michael Mancusi of Winston & Strawn, and Harold E. Doley, of Doley Securities, Inc. While Mr. Doley was there, Mr. Robert did not attend the meeting. Plaintiff's corrected Statement of Facts and corrected Buchanan Declaration fixes that mistake.

    These corrected documents are not relevant to Defendants' motion to dismiss. Rather, they concern Plaintiffs' motion for summary judgment, to which Defendants have not yet responded.

                Respectfully submitted,


            _____\s_____
            Thomas Buchanan # 337907
            Winston & Strawn LLP
            1700 K Street, N.W.
            Washington, D.C.  20006-3817
            (202) 282-5000

Dated:  May 6, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing *Plaintiff's Errata Statement of Material Facts as to Which There Exists No Genuine Issue for Trial and Buchanan Declaration in Support of its Motion for Summary Judgment* has been sent through the Court's electronic transmission facilities on this 6th day of May, 2008.

_____\\s\_____
Charles B. Klein # 450984
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WINSTON & STRAWN LLP,

    Plaintiff,

vs.                              Case No: 1:08-cv-00144 (RBW)

HAROLD E. DOLEY
and DOLEY SECURITIES, INC.,

    Defendants.

**PLAINTIFF'S CORRECTED STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE EXISTS NO GENUINE ISSUE FOR TRIAL**

Pursuant to Local Rule 7(h), Plaintiff Winston & Strawn LLP ("W&S" or "Plaintiff"), by counsel, hereby submits its separate and concise statement of those material facts as to which there exists no genuine issue for trial.

**I.    Background**

1.    W&S is an international law firm with offices throughout the United States and abroad.  *See* Declaration of Thomas M. Buchanan at ¶ 2 (Ex. A).

2.    Harold E. Doley is an experienced businessman.  He is the founder of Doley Securities, Inc. ("DSI"), has been an individual seat holder on the New York Stock Exchange since 1973, and is an underwriting member of Lloyd's of London.  *Id.* at ¶ 3 & Attachment 1.

3.    DSI was founded in 1973.  It specializes in providing investment products and services to institutional clients, and its specialties include raising capital for securities issuers, providing secondary market services for institutional investors, and furnishing financial advisory services to institutions, corporations, government and political subdivisions.  *Id.* at ¶ 4 & Attachment 1.

4. Chad Robert serves as the President of DSI. *Id.* at ¶ 4 & Attachment 1.

5. Before Doley and DSI retained W&S, the Office of Thrift Supervision ("OTS") served on Defendants a subpoena for documents. In response, Defendants produced thousands of pages of documents to the OTS. *Id.* ¶ 5.

6. Thereafter, OTS issued a second subpoena to Defendants requesting additional documents and Doley's deposition. In the early spring of 2007, after the return date of the second round of documents had already passed but before any documents were produced, Defendants approached W&S seeking legal counsel. *Id.* ¶ 6.

7. Before W&S's representation of Defendants began, W&S partners Thomas M. Buchanan and Michael A. Mancusi met in person with Doley, who was representing his interests and the interests of DSI. Buchanan and Mancusi explained to Doley what legal work would need to be done to represent Doley and DSI properly. In particular, Buchanan and Mancusi explained that W&S would need to review the documents that Doley and DSI already produced to the OTS, and also would need to review additional documents that could be responsive to the second OTS subpoena. Buchanan and Mancusi further explained that they needed to prepare Doley for his OTS deposition and then defend that deposition. Doley said in that meeting that he understood what W&S's work would entail. *Id.* ¶ 7.

8. During that initial meeting, W&S also explained the fees and costs that would be associated with W&S's representation of Defendants. Buchanan said that the matter would be billed on an hourly rate basis, in quarter-hour increments, and that his hourly billing rate was $595 and Mancusi's hourly billing rate was $480. Again, Doley told Buchanan and Mancusi that he understood and accepted the fees and costs that were associated with W&S's legal work. *Id.* ¶ 8.

II.    **The Parties' Agreement**

9.    On April 19, 2007, before W&S conducted any work on behalf of Defendants, Buchanan sent an engagement letter agreement to both Doley and DSI.  This agreement provides, among other things, that "the firm's clients will be clients Harold Doley and Doley Securities, Inc."  The parties' agreement also states that W&S's "policy at the outset of an engagement with new clients is to outline not only the nature of the engagement, but also the basis on which the firm will provide legal services and bill for them." *Id.* ¶ 9.

10.    The letter agreement discusses the terms of the attorney-client relationship and explicitly states, among other things, that:  (1) the nature of the engagement concerns W&S's representation of Defendants in the OTS investigation; (2) W&S's fees would be determined on an hourly basis, with attorney hourly rates ranging from $200 to $845; (3) the firm's bills would include allocable charges for costs and expenses incurred in performing the legal services; (4) W&S would bill Defendants monthly; and (5) the firm expected Defendants to pay the bills within 30 days of the invoice.  *Id.* at ¶¶ 10-12 & Attachment 2 at ¶¶ 2-4.

11.    In the letter agreement, W&S requested that Defendants pay a "$10,000 retainer to initiate the engagement" and explained that "[t]his retainer will be applied against ongoing fees and expenses." *Id.* at ¶ 13 & Attachment 2 at ¶ 10.  Defendants paid this $10,000 retainer on May 23, 2007. *Id.* at ¶ 15.

12.    Doley signed the letter agreement on April 20, 2007, on his behalf, and Robert signed the engagement letter on April 20, 2007, on behalf of DSI.  In the agreement, both Doley and DSI "acknowledge[d] and agree[d] that, prior to entering this Agreement, they have been advised and have had the opportunity to consult with independent counsel (not W&S) regarding the terms and conditions of this Agreement." *Id.* at ¶ 14 &  Attachment 2 at ¶ 10.

III.    **W&S's Performance Under The Agreement**

13.    W&S performed legal services on behalf of Defendants after the parties executed the engagement letter. First, there was a dispute over what OTS claimed Defendants produced pursuant to the first subpoena, and what Defendants believed that they produced. In connection with this dispute, W&S had to review the thousands of pages of documents that were produced pursuant to the first subpoena and then meet with OTS representatives to compare what they received to what Defendants believed was produced. *Id.* at ¶ 16.

14.    Second, W&S needed to review thousands of additional pages to determine if Defendants needed to supplement their production based on the second OTS subpoena. As those documents were due before W&S even began its representation of Defendants, W&S had to conduct their document review over a short period of time. The firm did produce additional documents on behalf of Defendants. *Id.* at ¶ 16.

15.    Third, W&S had to prepare Doley for his deposition. The firm also defended Doley's deposition. *Id.* at ¶ 16.

16.    Finally, W&S provided legal advice to Defendants regarding certain purchases of stock. *Id.* at ¶ 16.

17.    This legal work was performed by W&S partners Buchanan and Mancusi, and a W&S associate. In total, W&S devoted 215.25 of legal work on behalf of Defendants. All of this work was necessary and appropriate with regard to W&S's representation of Defendants *Id.* at ¶¶ 17-18.

IV.    **Defendants' Breach Of The Agreement**

18.    Pursuant to the parties' agreement, W&S sent three detailed bills dated June 28, 2007, July 18, 2007, and August 28, 2007, to Defendants covering both legal fees and expenses incurred during the course of the legal representation. The June 2007 bill totaled $68,931.85; the

July 2007 bill totaled $20,226.37; and the August 2007 bill totaled $5,253.97.  W&S's total charges to Defendants was $94,412.19.  *Id.* at ¶ 19 & Attachment 3.  W&S sent Defendants monthly statements of account – statements never contested by Defendants.  *Id.* & Attachment 4.

19.   Defendants never complained to W&S about the quality or quantity of work that W&S was performing.  Nor did Defendants ever complain outside the context of this lawsuit about the amount W&S charged for its legal services on behalf of Defendants.  On the contrary, Doley promised on several occasions that payment was forthcoming.  But that payment never came.  *Id.* at ¶ 20; *see also* Declaration of Michael A. Mancusi at ¶ 6 (Ex. B).

20.   W&S applied the $10,000 retainer to amounts owed by Defendants to W&S.  Thus, to date, Defendants owe W&S $84,412.19, plus interest.  Declaration of Thomas M. Buchanan at ¶ 21 (Ex. A).

Respectfully submitted,

_____\s\_____
Thomas Buchanan # 337907
Charles B. Klein # 450984
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C.  20006-3817
(202) 282-5000

*Counsel for Plaintiff*

Dated:  May 6, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WINSTON & STRAWN, LLP,

    Plaintiff,

vs.

HAROLD E. DOLEY
and DOLEY SECURITIES, INC.,

    Defendants.

Case No: 1:08-cv-00144 (RBW)

### CORRECTED DECLARATION OF THOMAS M. BUCHANAN, ESQ.

Pursuant to 28 U.S.C. § 1746, in lieu of a personal appearance, I, Thomas Buchanan, make the following statement:

1. I am over 21 years of age, and I have personal knowledge of the facts and matters attested to in this Declaration, and I am competent to be a witness to the facts and matters attested to in this Declaration.

2. I am a partner with Winston & Strawn LLP ("W&S"), which is an international law firm with offices throughout the United States and abroad.

**I.  The Defendants**

3. Harold E. Doley is an experienced businessman. According to the website of Doley Securities, Inc. ("DSI"), he is the founder of DSI, has been an individual seat holder on the New York Stock Exchange since 1973, and is an underwriting member of Lloyd's of London. *See* Attachment 1 (Company Information).

4. According to its website, DSI was founded in 1973. It specializes in providing investment products and services to institutional clients, and its specialties include raising capital

for securities issuers, providing secondary market services for institutional investors, and furnishing financial advisory services to institutions, corporations, government and political subdivisions. *See id.* Chad Robert serves as the President of DSI.

## II. Background

5. Before Mr. Doley and DSI retained W&S, the Office of Thrift Supervision ("OTS") served on Defendants a subpoena for documents. In response, Defendants produced thousands of pages of documents to the OTS.

6. OTS issued a second subpoena to Defendants requesting additional documents and Mr. Doley's deposition. In the early spring of 2007, after the return date of the second round of documents had already passed but before any documents were produced, Defendants approached W&S seeking legal counsel.

7. Before W&S's representation of Defendants began, a partner of mine, Michael A. Mancusi, and I met in person with Mr. Doley, who was representing his interests and the interests of DSI. Mr. Mancusi and I explained to Mr. Doley the legal work that would need to be done to properly represent Mr. Doley and DSI. We explained that we needed to review the documents they already produced, and also review more documents that could be responsive to the second subpoena. In addition, we explained that we would need to prepare Mr. Doley for his deposition and then defend his deposition. At the meeting, Mr. Doley indicated to me that he understood what W&S's work would entail.

8. During that initial meeting, Mr. Mancusi and I also explained the fees and costs that would be associated with W&S's representation of Defendants. In particular, I described that the matter would be billed on an hourly rate basis, in quarter-hour increments, and that my hourly billing rate was $595 and Mr. Mancusi's billing rate was $480. We also explained that

associates of W&S may also be working on the matter, but they would bill at lower hourly rates. Mr. Doley told Mr. Mancusi and me that he understood and accepted the fees and costs that were associated with W&S's work on the matter.

### III. The Parties' Agreement

9. On April 19, 2007, before W&S conducted any work on behalf of Defendants, I sent to both Mr. Doley and DSI an engagement letter agreement to memorialize the parties' agreement. This agreement provides, among other things, that "the firm's clients will be clients Harold Doley and Doley Securities, Inc. The scope of our engagement will be limited to the representation of each of you in the [investigation being conducted by the OTS]." The agreement also states that W&S's "policy at the outset of an engagement with new clients is to outline not only the nature of the engagement, but also the basis on which the firm will provide legal services and bill for them." *See* Attachment 2 (Ltr. Agree. at 1 ).

10. The letter agreement states, in part, that W&S's fees for work on the matter would be determined on an hourly basis. I provided Defendants with my then-current hourly rate of $595, as well as the hourly rate ranges for partners, associates, and legal assistants. *See id.* (Ltr. Agree. at ¶ 2)

11. The letter agreement also states that there would be costs associated with W&S's representation of Defendants in addition to W&S's legal fees. *See id.* (Ltr. Agree. at ¶ 3).

12. The letter agreement also states that W&S renders on-account bills monthly and expects its clients to pay account statements within 30 days. *See id.* (Ltr. Agree. at ¶ 4).

13. The letter agreement also requested that Defendants pay a "$10,000 retainer to initiate the engagement" and explained that "[t]his retainer will be applied against ongoing fees and expenses." *See id.* (Ltr. Agree. at ¶ 10).

14. Mr. Doley signed the letter agreement on April 20, 2007, on his behalf, and Mr. Robert signed the engagement letter on April 20, 2007, on behalf of DSI. In the letter agreement, both Mr. Doley and DSI acknowledged that they were given the opportunity to consult with independent counsel before signing the engagement letter. *See id.* (Ltr. Agree. at 4).

15. Mr. Doley and DSI paid the $10,000 retainer on May 23, 2007.

IV. **W&S's Performance Under The Agreement**

16. W&S performed legal services on behalf of Defendants after the parties executed the engagement letter agreement. First, there was a dispute over what OTS claimed Defendants produced pursuant to the first subpoena, and what Defendants believed that they produced. In connection with this dispute, W&S had to review the thousands of pages of documents that were produced pursuant to the first subpoena and then meet with OTS representatives to compare what they received to what Defendants believed was produced. Second, W&S needed to review thousands of additional pages to determine if Defendants needed to supplement their production based on the second OTS subpoena. As those documents were due before W&S even began its representation of Defendants, W&S had to conduct their document review over a short period of time, and the firm did produce additional documents on behalf of Defendants. Third, W&S had to prepare Doley for his deposition. The firm also defended Doley's deposition. Finally, W&S provided legal advice to Defendants regarding certain purchases of stock.

17. This legal work was performed by me, Mr. Mancusi, and an associate. As described in the letter agreement, my billing rate was $595. Mr. Mancusi's billing rate was $480, and Mr. Court billed at a rate of $365. *See* Attachment 3 (Invoices).

18.     In total W&S devoted 215.25 of legal work on behalf of Defendants. Mr. Mancusi billed 102 hours, Mr. Court billed 101 hours, and I billed 12.25 hours. All of this work was appropriate and necessary to W&S's representation of Defendants *See id* (Invoices).

V.     **Defendants' Breach Of The Agreement**

19.     W&S sent three bills to Defendants in June, July and August of 2007. The June bill totaled $68,931.85, the July bill totaled $20,226.37, and the August bill totaled $5,253.97. All three bills not only described the total amount of charges, but also gave a description of the work performed by Mr. Mancusi, Mr. Court and me. The total charges to Defendants was $94,412.19. *See id* (Invoices). W&S sent Defendants monthly statements of account – statements Defendants never contested. *See* Attachment 4 (Statements of Account).

20.     Defendants never complained to W&S about the quality or quantity of work that W&S was performing. Nor did Defendants ever complain outside the context of this lawsuit about the amount W&S charged for its legal services on behalf of Defendants. On the contrary, Mr. Doley promised me on several occasions that payment was forthcoming. But that payment never came.

21.     W&S applied the $10,000 retainer to amounts owed by Defendants to the law firm. To date, Defendants owe W&S $84,412.19.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on May 6, 2008.

_____
Thomas M. Buchanan